Nov. Term,
1856.
WRIGHT
v.
DEFREES.

## WRIGHT *v.* DEFREES and Others.

The three co-ordinate departments of the State government are absolutely independent of each other: one of them cannot inquire into the motives controlling the action of another.

This Court cannot inquire by what motives the members of the legislature were governed in the enactment of a law.

The complaint must show that the plaintiff has been injured: an allegation that other persons were injured by the conduct of the defendant is not sufficient.

The conditions spoken of in article 11, s. 1, of the constitution, relate exclusively to the subject of banking.

The 45th section of the charter of the *Bank of the State of Indiana*, does not authorize a suspension of specie payment, within the meaning of article 11, s. 7, of the constitution.

*Monday, December 8.*

APPEAL from the *Marion* Circuit Court.

GOOKINS, J.—This action was brought by *Joseph A. Wright* against *John D. Defrees, Andrew L. Osborn, John T. Elliott, Addison L. Roache, —— Van Duzen, Washington H. Talbott* and *John S. Spann.* The complaint was filed *October* 27, 1855. It contains three paragraphs, or causes of action, the first of which states that the plaintiff is the owner of one share of the capital stock of the *Indianapolis* branch of the *Bank of the State of Indiana;* that the defendants, and others unknown to the plaintiff, but who, when discovered, are prayed to be made parties, at the last session of the General Assembly, by fraud, corruption, and bribery, procured to be

passed by a majority of both houses of that body, and over the veto of the governor, a bill entitled, "An act to establish a Bank with Branches," which the plaintiff alleges to be unconstitutional and void, but which the defendants and their confederates are attempting to put in force and carry into effect and operation by fraudulent and corrupt proceedings,—to organize under its provisions, and to put in operation such a bank with branches, at various places in this State; that *Thomas L. Smith*, and the defendants, *Osborn, Elliott, Roache* and *Defrees*, who were named as commissioners in said act, met at *Indianapolis* within the time therein mentioned, divided the State into bank districts, and appointed two sub-commissioners for each district, to receive subscriptions of stock, and to perform the other duties required by the act; that branches were located at *Indianapolis, New Albany, Evansville, Vincennes, Terre Haute, Lafayette, Laporte, South Bend, Fort Wayne, Richmond, Bedford* and *Jeffersonville*; that there are other districts unknown to him; that the plaintiff has applied to said *Defrees* for information as to the number of districts, the location of the branches, the names of the sub-commissioners and stockholders, which he refuses to give; that 100,000 dollars of stock has been subscribed at each branch; that *Thomas L. Smith*, one of the commissioners, has resigned, and *Van Duzen* has been appointed in his place.

It is further stated that the stockholders have been required to pay two dollars on each share of stock subscribed, on the 24th of *October*, 1855, and when paid, it is the intention of the defendants and their confederates to have certificates of stock issued to the subscribers, and to complete the organization by electing a board of directors for each branch, who are to elect from each branch a representative to the board of directors of the State bank, who are to meet at the capital and organize said board, and do what is necessary to put the bank in operation, which they will do unless restrained.

The complaint then alleges that the said legislative

enactment is unconstitutional and void, and proceeds to specify in what particulars it is so.

1. It exempts from taxation the capital stock for municipal purposes.

2. It gives the bank a lien on the stock for debts due from stockholders, although it declares the stock personal property, and subject to be sold on execution, against the owner, thereby giving the bank a privilege not accorded to other citizens.

3. It authorizes indirectly the suspension of specie payment by the bank, by suspending suits, judgments, and executions against any branch, when the board of directors may suspend the same, thereby creating a special stay of execution in favor of the suspended branch.

4. It limits the number of branches to twenty, (and not less than fifteen), in the discretion of the commissioners, declaring counties wherein a branch of the bank is already established, entitled to a branch, thereby conferring a privilege on citizens and classes of citizens, which belongs equally to all citizens.

The second paragraph alleges that the defendants and their confederates, in violation of the true intent and meaning of said act, fraudulently and corruptly procured the appointment of sub-commissioners subservient to their designs, who, in violation of their duty, at the times of receiving subscriptions, did not openly offer to take such subscriptions in such manner as to allow the taking thereof, except by their favorites and confederates; that they opened the books only three, four, or five minutes before 12 o'clock, M., and closed them exactly at 12 o'clock, M., without proclamation or notice that they had opened the books and were ready to receive subscriptions, and that by secret, covert, and unfair means, all except the defendants and their confederates were prevented from subscribing to said stocks,— by which unfair and dishonest conduct said sub-commissioners, defendants, and their confederates, have monopolized all the stock authorized to be taken; that many of the sub-commissioners subscribed stock for

themselves and their confederates, and before the day appointed for receiving the subscriptions, discountenanced and discouraged others from subscribing, by representing that their subscriptions would not be received, and that the stock would be given to those only who had taken an interest in procuring the passage of the law.

The third paragraph alleges that said act is null and void, because it impairs the obligation of the contract made by the State and the stockholders in the several branches of the State Bank, incorporated in 1834, said bank having the exclusive rights and franchises claimed and sought to be exercised by the said commissioners, sub-commissioners, and stockholders, and having never forfeited its charter or franchises.

Prayer that the act be declared unconstitutional and void; that the subscriptions of stock be declared fraudulent and void; that the defendants and their confederates be ousted of their offices, and enjoined from further proceeding to organize said bank, and for general relief.

On the 17th of *January*, 1856, the plaintiff filed an amendment to the second paragraph of the complaint, averring that since the filing of the original complaint said bank has been pretended to be organized by delegates from the pretended branches at *Lima, Laporte, Plymouth, South Bend, Lafayette, Fort Wayne, Logansport, Indianapolis, Richmond, Connersville, Rockville, Madison, Jeffersonville, New Albany, Bedford, Vincennes,* and *Terre Haute,* which pretended branches, and the said pretended bank are made defendants; that said pretended branches have been organized illegally, fraudulently, and corruptly; that said sub-commissioners, at the time appointed for receiving subscriptions of stock, so conducted as to prevent many persons from subscribing to said stocks; that the sub-commissioners opened and closed the books secretly, only receiving, or having beforehand received and entered, the names of their favorites, allowing no others to subscribe; that the books

Nov. Term,
1856.

Wright
v.
Defrees.

were not opened between the hours of 9 and 12 of the appointed day within the meaning of the act; that the business was in all cases conducted in this way; that the sub-commissioners secretly, covertly, and fraudulently kept away from the places appointed for receiving subscriptions, and kept the books out of view of persons desiring to subscribe, until not longer than five minutes before 12 o'clock, and then allowed no one to subscribe except the defendants and their confederates, in whose names all the stock was taken, and the books were then instantly closed, whereby *Hunt, Davis*, and many other good and responsible citizens, whose names are given, who were at the places respectively, and who were ready and desirous of subscribing to said stocks, were prevented from doing so.

The defendants, protesting that the matters alleged were untrue, demurred to the several paragraphs of the complaint. The demurrers were sustained by the Circuit Court, and judgment given for the defendants.

The several grounds on which the appellant, as a stockholder in the old State bank, seeks the relief prayed may be grouped together under three general heads—1. Fraud in procuring the passage of the law. 2. Fraud in organizing under it; and 3. Its unconstitutionality.

1. The third article of the constitution divides the powers of the government into three separate departments,—the legislative, the executive, and the judicial,—and provides that no person charged with official duties under one of the departments, shall exercise any of the functions of another, except as in the constitution expressly provided.

The powers of the three departments are not merely equal,—they are exclusive, in respect to the duties assigned to each. They are absolutely independent of each other. It is now proposed that one of the three powers shall institute an inquiry into the conduct of another department, and form an issue to try by what

motives the legislature were governed in the enactment of a law. If this may be done, we may also inquire by what motives the executive is induced to approve a bill or withhold his approval; and, in case of withholding it corruptly, by our mandate compel its approval. To institute the proposed inquiry would be a direct attack upon the independence of the legislature, and a usurpation of power subversive of the constitution. We say nothing as to what rights the State may have in a case of this kind. The State is no party to these proceedings. It is a case between citizens. *C. J. Marshall* said in *Fletcher* v. *Peck*, 6 Cranch, 87, "It would be indecent in the extreme upon a private contract between two individuals, to enter into an inquiry respecting the corruption of the sovereign power of a state. If the title be plainly deduced from a legislative act, which the legislature might constitutionally pass, if the act be clothed with all the requisite forms of law, a court, sitting as a court of law, cannot sustain a suit brought by one individual against another, founded on the allegation that the act is a nullity in consequence of the impure motives which influenced certain members of the legislature which passed the law."

We are of the opinion that the demurrer to the first paragraph was properly sustained.

2. The second paragraph as amended alleges fraud in organizing the corporation under the charter, chiefly in the manner in which the business was conducted in receiving subscriptions of stock.

This ground of complaint is radically defective because it does not show that the plaintiff has been injured. He does not allege that he attempted or desired to subscribe, or that he was prevented from so doing. The complaint is made on behalf of other good and responsible persons, who, it is said, were ready at the respective times and places, and were desirous of subscribing, but were prevented. When they complain of the proceeding, it will be the proper time to inquire into the

Nov. Term,
1856.

WRIGHT
v.
DEFREES.

conduct of the defendants and to apply such remedies as the law may entitle them to.

3. The third cause of action, which is presented by the third paragraph and a part of the first, is, that the charter of the new State Bank is unconstitutional. The particulars in which its unconstitutionality is alleged to consist are, that the 15th section of the charter exempts the stock of the bank or branches from taxation for municipal purposes,—which, it is said, violates article 1, s. 23, of the constitution, which declares that the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens; and that it also violates article 10, s. 1, which requires that the rate of taxation shall be uniform and equal. It is further insisted that the 26th section of the charter which provides that the stock shall be considered as personal property, and may be sold on execution, and transferred on the books of the branch by the officer selling the same, but in all cases subject to a lien in favor of the bank for all debts *bona fide* due, or then owing, or to become due the same from the owner, is the granting of a special privilege to a class of citizens, in violation of the 23d section of article 1 of the constitution above quoted. The 45th section of the charter is also alleged to be invalid. The 39th section gives power to the State board to suspend any branch which is insolvent or is mismanaging its affairs. Other sections provide for the manner of proceeding in such case; and the 45th section provides that the order suspending a branch shall suspend all suits, judgments, orders, decrees, and executions against such branch; that claims in suits pending at the time of suspension, shall be submitted to the State board, or persons entrusted with the affairs of the branch; that if they shall not admit the justness of the claim, and agree to pay it on closing up the affairs of the branch, the suit may progress to judgment, but that execution thereon, and all other execu-

tions and decrees shall remain until one year from the time the branch was suspended. This section, it is alleged violates article 1, s. 12, of the constitution, which declares that every person for an injury done him shall have remedy by due course of law; and article 4, s. 22, which declares that the General Assembly shall not pass local or special laws regulating the practice in courts of justice; also the 23d section of the same article, which requires all laws to be general, and of uniform operation throughout the State, by giving to banks a special stay law; also, that it confers special privileges, and immunities, in violation of article 1, s. 23, above quoted; and further, that it violates article 11, s. 7, which provides that no law shall be passed sanctioning directly or indirectly the suspension, by any bank or banking company, of specie payment.

The appellees answer this position by denying that the act is unconstitutional in the particulars enumerated; but, they say, admitting that it were so, it would not invalidate the entire act, but only the specified portions of it. This position is assailed by the appellant upon the following ground: Article 11, s. 1, of the constitution provides that the General Assembly shall not have power to establish or incorporate any bank or banking company, or moneyed institution, for the purpose of issuing bills of credit, or bills payable to order or bearer, except under the conditions prescribed in this constitution. This, it is said, is a grant of power, with a condition annexed; and that any attempted enactment of a charter which violates any condition, is void in toto; and it is insisted that the conditions here referred to are not those contained in the constitution on the subject of banks, but every provision of the constitution.

This position we think cannot be maintained. The conditions spoken of in article 11, s. 1, relate to the subject of banking. This eleventh article provides for two modes or systems of banking,—one under a general banking law, requiring collateral security for the redemption of its issues,—the other a State bank with

VOL. VIII.—20

branches, which is authorized to be chartered without collateral security. Then there are various provisions applying to each, and some to both; such as that, in a State bank the branches shall be responsible for each other's liabilities; prohibiting a suspension of specie payment by any bank; that the State shall not be a stockholder, &c. The first section of article 11 was designed to insure conformity to these conditions.

But it is urged that one, at least, of the conditions on the subject of banking is violated, which, it is claimed, renders the entire act nugatory; that is the 45th section which, it is said, indirectly authorizes a suspension of specie payment. Without admitting the conclusion which the appellant seeks to draw from the premises, we are of the opinion that the 45th section does not authorize a suspension of specie payment, within the meaning of the constitutional provision. The evident intention of that provision was to prohibit a suspension of specie payment, while the bank was permitted to go on with its business. When a branch is suspended by the order of the State board, its business operations must cease forthwith, except so far as may be necessary to wind up its affairs. It is like the settlement of a decedent's estate. The provision, or one like it, seems necessary to give effect to the 8th section of the same article, which gives holders of bank notes preference over all others in case of insolvency. This makes it necessary that the proceedings against an insolvent bank shall be stayed until its assets can be collected,—otherwise they might be seized by other creditors.

It is not doubted that an act of the legislature may be valid in part and void in part. We express no opinion as to whether the specified parts of the act are or are not constitutional. Admitting them not to be, that would furnish no ground for declaring the whole act void and enjoining proceedings under it.

The ground assumed in the third paragraph, that the granting of this charter was an infringement upon the

rights of the old State bank, is waived in argument and we do not therefore consider it.

The view we have taken of the case, renders it unnecessary, also, to consider whether the plaintiff, as an individual stockholder of the old bank, has such a separate interest in the subject as would authorize him to maintain this suit, if it were otherwise maintainable.

As neither of the paragraphs contains facts sufficient to constitute a cause of action, the judgment of the Circuit Court must be affirmed.

*Per Curiam.*—The judgment is affirmed with costs.

STUART, J., not having heard the argument in this case, gave no opinion.

*J. Morrison, C. A. Ray* and *J. T. Morrison,* for the appellant.

*H. O'Neal* and *T. L. Smith,* for the appellees.