STATE OF KANSAS *ex. rel.* F. G. HUNT *vs.* CALVIN MEADOWS, *respondent.*

## *Motion for writ of Mandamus.*

A showing, by affidavit, that the relator is register of deeds of Breckinridge county, that as such he applied to respondent, who is register of deeds of Madison county, to transcribe the records of the latter county effecting real estate of that portion of Madison county, annexed, by law, to Breckinridge county, and that respondent refused to permit him so to do, entitles the relator to an an alternative writ of mandamus.

It was competent for the framers of the Constitution to provide against an interregnum in the government in the change from a Territorial form to that of a State. *Held* that they have done so in section third of the schedule to the Constitution, which continues in office the "Governer, Secretary and Judges and all other officers, both civil and military, under the Territorial government" until superceded under authority of the Constitution.

Members of the Legislature *held* to be included within the provisions of this section.

The Territorial Legislature was not superceded before the issuing of the proclamation of the Governer of the State convening the State Legislature, which was on the 9th day of February, 1861.

The case *Benner et. al. vs. Porter* (9 *How. S. C. U. S.* 239) referred to as an authority.

The act passed by the Territorial Legislature, approved January 31st, 1861, annexing a portion of Madison county to Breckinridge county, is a law of the State.

In addition to the facts that appear in the opinion of the Court, it was shown by affidavit of the relator that there were certain records of deeds and mortgages and other instruments of writing effecting real estate in that portion of Madison county annexed to Breckinridge county by the act of January 31st, 1861, in the books of the office of register of deeds of Madison county.

The State of Kansas *ex. rel.* Hunt *v.* Meadows.

*Wilson Shannon and P. B. Plumb,* for relator, submitted:

The facts upon which this case turns, are the admission of Kansas into the Union as a State before the passage of the act in question by the Territorial Legislature, (*Ter. Stat.* 1861, *p.* 17,) and the passage of the act before the assembling of the Legislature elect under the State Constitution, and also before the reception by the Governor elect under that Constitution, of that " official information " which he was required to have before convening the Legislature. The question is, whether the Territorial Legislsture, in regular session at the time of the admission, had a right to continue in the exercise of its (or any of its) functions as a Legislature, after that period.

Kansas was admitted into the Union on the 29th day of January, 1861.

The act in question was passed on the 31st of January, 1861.

The Governor elect under the Constitution, received official information of the admission on the 9th of February, and on that day issued his proclamation convening the Legislature, which assembled on the 28th of March, 1861.

Section three of the schedule provides that, " the Governor, Secretary and Judges, and all other officers, both civil and military, under the Territorial government shall continue in the exercise of the duties of their respective departments, until the said officers are superceded under the authority of this Constitution."

It will not be denied that the constitutional convention had power to provide against an interregnum, by adopting the Territorial officers and machinery. (*Benner et. al. vs. Porter,* 9 *How.* 242.) That they designed to fill every department of the State government in this manner, would seem to be apparent, from the language of the schedule above quoted. True, the Legislature is not specially mentioned, and it may

be said that the descending scale of expression, as used in the section, is against the assumption that the Legislature was intended. But the sweeping provision of "all other officers, both civil and military, under the Territorial government," would seem to be sufficient to include the Legislature. The two grand divisions of officers are "civil and military." (*Bouv. Law Dic.*, vol. 2, *tit.* "*Officers.*") Members of the Legislature are officers of the government. (*Id.*) Besides, if the convention had intended to make so notable an exception to the operation of the general rule laid down in section three, would not they have so expressed it in affirmative words, instead of leaving it to doubtful implication? Is it not rather probable that the "Governor, Secretary and Judges" were specially mentioned, because they were the appointees of the federal government? All the federal appointees are named, while the officers chosen by the people under the Territorial government, are left to be included under the general clause of "all other officers, both civil and military." The provision of the schedule of the Florida constitution is of precisely similar import: "All officers, civil and military, now holding their offices and appointments in the Territory, under the authority of the United States, or under the authority of the Territory, shall continue to hold and exercise their respective offices and appointments until superceded under this constitution." And it was decided by the Supreme Court of the United States, in a case in which it became necessary to decide upon the effect of the above quoted words in the schedule, that "under this ordinance of the constitution, on the admission of Florida as a State into the Union, the organization of the government under the new constitution became complete; as *every department* became filled at once by the adoption of the Territorial laws and appointment of the Territorial functionaries for the time being." (*Benner et. al. vs. Porter*, 9 *How. p.* 242, *Nelson, J.*) And the Court further intimate that the same conclusion

would be reached if the schedule had contained no such provision, and the State had come into the Union with nothing but her organic law—that is, upon principles of general law, recognized by the common law, and from a civil necessity operating under all changes of sovereignty and jurisdiction, the Territorial officers and the machinery of the Territorial government would have continued in operation until such time as the State officers and the machinery of the State government had been called into actual existence. Thus strongly is the presumption of law against all interregnum.

The Territorial Legislature was superceded, under the authority of the constitution, only when the members of the State Legislature had been called into actual existence as members of a legislative department, and endowed with the practical functions of legislation. The convention having continued the officers and machinery of the Territorial government, no department of that government could be superceded until the corresponding department of the State government was organized and ready for active operation. In no other way would the object of the convention be attained. In that way only could inconvenience be prevented. It would be a most serious inconvenience, resulting from the change, if rights which have been acquired under and by the action of the Territorial Legislature between the time of the admission of Kansas into the Union, and the reception here, by the proper authority, of the *official* information of that fact. This *ought* to have been, and doubtless was, one of the real inconveniences which the convention designed to guard against.

It might have devolved upon the Territorial Legislature, in case of the death of the Governor before official information was by him received of the admission of Kansas into the Union, to provide for the putting into active operation of the State government.

No one but the Governor elect was authorized to convene

the State Legislature. In case of his death or failure to act, the whole government would be at sea, without the existence of the Territorial Legislature.

The powers of the Legislature would be those given by the organic act, limited by the restrictions of the constitution.

By the Court, KINGMAN, J. The relator, F. G. Hunt, shows by affidavit that he is the register of deeds of the county of Breckinridge, and that as such register of deeds he made application to the said Calvin Meadows, who is the register of deeds of Madison county, to transcribe all deeds, mortgages, and other instruments of writing affecting any of the real estate of that portion of Madison county annexed to Breckinridge county by an act, approved January 31st, 1861, and that the register of deeds of Madison county refused to permit him so to do.

The relator, upon the showing so made, is entitled to an alternative writ of mandamus, if the act referred to is the law of the State.

The only question involved is, had the Legislature, which was elected under the Territorial organization, and which was in session when Kansas was admitted, the power, after the admission, to pass laws?

This question is not free from difficulty. Kansas was admitted on the 29th of January, 1861, and this act was passed on the 31st of January, 1861.

By the twenty-third section of the schedule to the constitution the Governor elect, under the constitution, was required, upon receiving *official* information of the admission of Kansas into the Union, to proclaim the same, and convene the Legislature elected under it. This proclamation was issued on the 9th day of February, 1861.

Section three of the schedule provides that the "Governor, Secretary and Judges, and *all other officers*, both civil and military, under the Territorial government, shall continue in

the exercise of the duties of their respective departments until the said officers are superceded under the authority of this constitution.

It was, without doubt, competent for the constitution, by its terms, to provide against an interregnum, by adopting the Territorial officers and machinery, and by making the existing functionaries of the Territory the officers of the State for the time being, to secure the means of preserving by legal steps the enforcement of the laws. That they designed so to do and to fill every department of the State government in this way until superceded by the action of the State government, provided for elsewhere in the constitution, would seem to be apparent from the language above quoted. The expression "*all* other officers" is very broad and comprehensive. It could hardly have been made more so: Members of the Legislature, not only in the common use and acceptation, but in the technical and legal sense of the term, are officers of the government. (*Bouv. Law Dic. vol.* 2, *tit.* "*Officers,*" *p.* 260.)

The Legislature of the State could, by no process of reasoning, be considered as superceding the Territorial Legislature before the issuing of the proclamation of the Governor convening them.

Had the convention intended to make so notable an exception as the Legislature to the operation of that clause of the schedule, is it not probable they would have so expressed it?

Having by a clause so broad and general included "all other officers," it seems impossible that they could have intended to exclude the Legislature without having done so by positive terms. The object of the clause seems to have been to provide for every contingency, and to secure the State in every event from falling into a position in which its machinery and movements would not be guided by law. It would have been a great calamity for the new State, just escaping from the convulsions that marked its early history,

had the convention left to the uncertainties of chance any of the means by which the government could be put in motion peaceably, and in accordance with provisions of law.

No one but the Governor elect, or possibly the Lieutenant Governor, was authorized to convene the State Legislature. In case of his death, absence or failure to act, the whole government would have been at sea, unless the Territorial Legislature had a legal existence. It might necessarily have devolved upon the body then in session to have provided for putting into active operation the regular State government. In no other way would the object of the convention be attained by regular legal means.

This reasoning is greatly strengthened by reference to the views of the Supreme Court of the United States in the case of *Benner et. al. vs. Porter*, (9 *How.* 239.) The provision of the schedule of the Florida constitution at the time of the admission of that State, was of precisely similar import, providing that "all officers, civil and military, now holding their offices and appointments in the Territory, under the authority of the United States, or under the authority of the Territory, shall continue to hold and exercise their respective offices and appointments until superceded under the constitution." Commenting upon this clause, that Court says: "It will be seen, therefore, under this ordinance of the constitution that on the admission of Florida as a State into the Union, the organization of the government under the new constitution became complete, as *every* department became filled at once by the adoption of the Territorial functionaries for the time being. The convention being the fountain of all political power from which flowed that which was embodied in the organic law, were, of course, competent to prescribe the laws and appoint the officers under the constitution, by means whereof the government could be put into immediate operation, and thus avoid an interregnum that must have intervened if left to an organization according to the provisions of that

instrument. This was accomplished by a few lines adopting the machinery of the Territorial government for the time being, and until superceded by the agency and authority of the constitution itself." It follows from this reasoning, which we admit is not conclusive and does not entirely leave the question free from embarrassment, that the act of January 31st is the law of the State, and an alternative writ of mandamus will be ordered.

Motion granted.