## HUMBOLDT COUNTY v. THE COUNTY COMMISSION-ERS OF CHURCHILL COUNTY.

CONSTITUTIONAL CONSTRUCTION—DEBT OF CHURCHILL TO HUMBOLDT COUNTY. The second section of the amendatory Act of 1869, concerning counties, providing for the payment of $3,000 a year for five years by Churchill County to Humboldt County, (Stats. 1869, 88) does not conflict with Art. IV, Sec. 17, of the Constitution, which prohibits a statute from embracing more than one subject and matters properly connected therewith, which shall be expressed in the title thereof.

Humboldt County *v.* The County Commissioners of Churchill County.

TITLE OF STATUTE WHAT TO EXPRESS.  It is only necessary, under the constitutional provision as to the subject-matter and title of statutes, (Const., Art. IV, Sec. 17) to express in the title the principal subject embodied in the law, while the matters properly connected therewith are not required to be mentioned.

PRESUMPTION OF CONSTITUTIONALITY OF STATUTES.  No statute will be annulled by a Court on the ground of unconstitutionality unless it be clearly in conflict with the Constitution.

STATUTORY CONSTRUCTION—IMPAIRING CONTRACTS.  The statute of 1869, providing for the payment of $3,000 a year for five years by Churchill County to Humboldt County, (Stats. 1869, 88) does not interfere with warrants drawn upon the treasury of Churchill County and registered at the date of its passage, and is not for any such reason open to the objection of impairing the obligation of contracts.

EFFECT OF AUDITING AND ALLOWING A CLAIM AGAINST A COUNTY.  The auditing and allowing of a claim against a county gives the holder thereof no lien upon or right to any money in the treasury, or which may come into it; it is only the order or warrant of the auditor which gives that right.

SPECIFIC APPROPRIATION OF COUNTY REVENUES.  The payment of all ordinary claims against a county is subject to any specific appropriation and setting apart of the county revenues for any designated purpose, unless such appropriation interfere with some prior vested right to the revenue.

LEGISLATIVE POWER—PREFERRING CLAIMS.  The Legislature undoubtedly has the power to direct that certain claims against a county shall have a preference over all others which are not so situated as to give the holder a vested right to money in or to come into the treasury.

RIGHTS OF COUNTY OFFICERS TO COUNTY REVENUE FOR SALARIES.  The county officers of Churchill County had no such vested right to the money in the treasury for the payment of their salaries, as to prevent the operation upon such money of the Act of 1869, (Stats. 1869, 88) providing for the payment of certain money yearly by Churchill to Humboldt County.

DUTIES OF COUNTY COMMISSIONERS—DISCRETION.  Under the Act providing for the payment of $3,000 a year for five years by Churchill to Humboldt County, (Stats. 1869, 88) the county commissioners of Churchill County had no discretion respecting the appropriation of the money.

MANDAMUS—COMMAND OF WRIT.  Where a discretion is to be exercised by an officer as to the manner in which an act may be done, or the act depends upon his judgment, a writ of mandate directed to him will not control his discretion, but only command him to act without in any way interfering with the manner of his action; but where, on the contrary, a specific act is required to be done and no discretion given, the writ may command the doing of the very act itself.

MANDAMUS—PREVIOUS DEMAND WHEN NECESSARY.  When the performance of the duty sought to be enforced by mandamus is of a character that could not be expected to be performed until demanded, the writ should not issue until demand made; but when the law unconditionally requires the doing of the specified act, no demand is necessary.

Humboldt County *v*. The County Commissioners of Churchill County.

MANDAMUS—OMISSION OF DUTY BY COUNTY COMMISSIONERS.  Where county commissioners were by statute absolutely required to set apart certain funds in the treasury for a specific purpose, and refused or neglected to do so:  *Held*, that mandamus was the only plain, speedy and adequate remedy to compel them to do their duty.

JUDICIAL POWER AS TO STATUTES.  No Court has a right to annul or set aside a statute except upon constitutional grounds, and no inquiry can be made as to any alleged misunderstanding between legislators respecting its adoption, or even fraud in procuring its passage.

STATUTES THE EXPRESSION OF FREE LEGISLATIVE WILL.  A statute must be taken by Courts to be the expression of the free will and wish of the Legislature, whatever may have been the means employed ¦to secure its adoption, and irrespective of any agreement or understanding had between members.

This was an original application made in the Supreme Court for a writ of mandamns.  It was made in behalf of Humboldt County against J. M. Sanford, James S. Gregory and J. S. Hall, county commissioners of Churchill County.  In response to the petition, which was filed February 21, 1870, an alternative writ was issued, to which the defendants made answer, tendering the various issues decided in the case, and also setting up that there was an understanding and agreement between Churchill and Humboldt counties, upon which the statute of 1869, referred to in the opinion, was predicated.  This agreement was to the effect that, if forty-three miles of the Central Pacific Railroad track were transferred from Humboldt to Churchill County, by means of the changes in the county boundaries made by the statute, then Churchill County was to pay Humboldt County $3,000 a year for five years; but if less than forty-three miles were transferred, then the amount of payment was to be proportionally less; and that, as a matter of fact, only twenty miles of track were transferred, and all that should be paid was about $1,400 a year for five years.

*P. H. Harris*, District Attorney of Humboldt County, for Petitioner.

I.    Mandamus is the proper and only remedy.   The duty sought to be enforced, viz: the setting apart of revenue, is purely *ministerial*.   And if it cannot be enforced by mandamus, the abuse is without remedy.   The commissioners alone have the power to set

apart revenue. If they decline, the Court, by writ of mandate, may compel them to act.

II. When, as in this case, the law enjoins upon a board or officer the performance of a duty which concerns the public, no *demand* is necessary. But mandamus will lie, upon failure to act within the prescribed time. (Moses on Mandamus, 125 ; 37 Penn. 237, 277.)

*J. M. Gray* and *Clayton & Davies*, for Defendants.

I. The second section of the statute is in violation of Art IV, Sec. 17, of the Constitution. Two distinct subjects are embraced in it, totally disconnected, and the matters embraced in the second section are not even remotely referred to in the title.

II. The Act is also repugnant to the Constitution of the United States, which forbids the passing of any law impairing the obligations of contracts. All claims against the county of Churchill which had been audited and allowed, and for which warrants had been drawn and numbered, would be impaired if the revenues, instead of being apportioned, as by law required, when they accrued, should be diverted to the payment of a subsequent claim. Such claims were contracts, entered into with the understanding that the county revenues would be apportioned as required by law, and that they would be paid in accordance with the numbers of the respective warrants as the money came into the particular fund chargable. If Churchill County could be compelled to set apart the money claimed, without regard to the various funds created by law, then clearly Humboldt County would be rendered a preferred creditor, and the rights of other creditors would be impaired and postponed, and might be rendered valueless. (*People* v. *San Francisco,* 4 Cal. 127 ; *Lafarge* v. *Magee,* 6 Cal. 650 ; *Robinson* v. *Magee,* 9 Cal. 81 ; *Smith* v. *Morse et al.,* 2 Cal. 504.)

III. The alternative writ, if properly issued, should only have commanded the commissioners to act, and in commanding the setting apart of a specific sum, was irregular. And as the peremptory writ must follow the alternative, the peremptory must in

this case be denied. (*People* v. *Supervisors of Dutchess Co.*, 1 Hill, 50, 345; *McSpeden & Baker* v. *Board of Supervisors*, 18 How. Pr. 156; *Tuolumne Co.* v. *Stanislaus Co.*, 6 Cal. 440; *Price et als.* v. *Sacramento*, 6 Cal. 254.)

IV.  Before defendant will be compelled to act by mandatory writ, demand must be made on him to act, and refusal on his part. (*People* v. *Romero*, 18 Cal. 89; Moses on Mandamus, 202; Tapping on Mandamus, 282; 9 Michigan Reports, 328.)

V.  If there has been a presentation of this claim, as alleged, and a rejection of it, then plaintiff has its remedy by action at law against Churchill County, and mandamus is not the proper proceeding. (*Crandall* v. *Amador Co.*, 20 Cal. 72; *Price et als.* v. *Sacramento*, 6' Cal. 254; 19 Abb. Pr. 376; 13 Penn. 72; 11 Penn. 196; 2 Grattan [Va.] 575; 1 Douglas, 319; 1 Pike, 11; 2 Cowen, 407.)

VI.  The county of Churchill ought not in justice to be compelled to set apart revenues to pay Humboldt County, if Humboldt upon a fair settlement is debtor to Churchill. (*Conner* v. *Morris*, 23 Cal. 447.)

By the Court, Lewis, C. J.:

The second section of an Act entitled "An Act to amend an Act of the Legislative Assembly of the Territory of Nevada, entitled An Act to create Counties and establish the Boundaries thereof," (Statutes of 1869, p. 88) directs the county commissioners of Churchill County " to set apart annually for five years the sum of three thousand dollars, out of revenues of said county, which sum shall be paid to Humboldt County each year until the sum of fifteen thousand dollars shall be paid." It also provides that " on or before the first day of January in each year the auditor of Churchill County shall draw his warrant on the treasurer of Churchill County, in favor of the treasurer of Humboldt County, for the sum of three thousand dollars in coin, and the' treasurer of Churchill County shall pay such warrant on presentation, out of the moneys set apart for the purpose as provided by

this section.   The treasurer of Humboldt County shall place the same into the redemption fund of Humboldt County."

By this law it was clearly made the duty of the commissioners to set apart the sum of three thousand dollars out of the treasury of Churchill County, for the benefit of Humboldt, prior to the first day of January, A. D. 1870.   This was not done, and the latter county prays a writ of mandate to compel the performance of the duty thus enjoined.

It is not denied that so far as the language of the law is concerned, the setting apart of the money is unequivocally required; but several defenses are interposed on the part of the commissioners of Churchill County, founded on matters outside of the language of the law itself, which it will be necessary to notice *seriatim*.   And first: it is argued the law does not conform to or rather is in conflict with section seventeen of article four of the State Constitution, which reads: " Each law enacted by the Legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title," and is therefore void.

Whilst this section restricts the scope of each law to " one subject, and matters properly connected therewith," it is only necessary in the title to express the principal subject embodied in the law, while the matters properly connected therewith are not required to be mentioned.

I.   Thus, the only question involved in the first point made by counsel is, whether the subject of the second section of the Act is properly connected with the matter mentioned in the title.   The title of the Act is "An Act to amend an Act of the Legislative Assembly of the Territory of Nevada, entitled An Act to Create Counties and establish the Boundaries thereof."   The first section changes the old boundaries of Churchill County, extending them so as to include a portion of the county of Humboldt; then follows the second section above quoted.   It does not perhaps distinctly appear from the Act itself that the setting apart and payment of fifteen thousand dollars by Churchill County to Humboldt is connected with the change of the boundaries of the former, but it is well known that when a new county is created from the territory

belonging to another, it is usual to apportion the indebtedness, if there be any, of the old between it and the new.   If in the law under consideration the Legislature had provided that Churchill County should assume and be required to pay the sum of fifteen thousand dollars of the indebtedness of Humboldt, there could be no doubt but that would be a matter properly connected with the subject mentioned in the title, for an apportionment of the indebtedness would be a matter necessarily growing out of and induced by the extension of the boundaries of Churchill County.   If, instead of thus apportioning the indebtedness in express terms, it be provided that a gross sum shall be paid by one county to another, in lieu of assuming indebtedness, is it less a matter connected with the change of boundaries of old or creation of new counties ? Certainly not.   Suppose this Act should declare that in consideration of territory taken from Humboldt and transferred to Churchill, the latter should pay a sum of money in installments ; it certainly would not be claimed to be a matter foreign to the subject mentioned in the title, if, as is the case here, the Act did change the boundaries of counties.   True, this is not expressed in the law ; but we judicially know that a change is effected in the boundaries of Churchill County, by the first section depriving Humboldt of a portion of its territory.   Can it not, then, be presumed that the payment was induced by such transfer of territory from one county to another ?   Nay, is it not quite evident that that was the moving cause for it ?   It is certainly safe to say that it is not clear that it was not ; and in such case the law must be upheld, upon the rule that no Act will be annulled unless it be clearly in conflict with the Constitution.

Can it be said that the setting apart of the money mentioned in the second section of the Act in question is not connected with the changing of the boundaries of the two counties, Humboldt and Churchill ?   We think not ; and hence must sustain the law and hold the first ground taken by counsel untenable.

II.   Is it shown that the setting aside of the sum of three thousand dollars out of the revenues of the year 1869 impairs the obligation of contracts ?   If so, the law must undoubtedly be held inoperative.   But clearly that result is not shown in this case.   It

might be that the appropriation of the sum here specified might interfere with and postpone the payment of warrants drawn upon the treasury of Churchill County, and registered at the time of the passage of the law. In that event, the law might be held an unwarrantable interference with the obligation of contracts; as in the case of *Lafarge* v. *Magee*, 6 Cal. 650. Here, however, the answer shows no such state of facts as will bring it within the rule there laid down. It is not alleged, nor in any way shown, that there were any warrants outstanding against the treasury at the time of the passage of the Act, which would be delayed in payment by reason of the appropriation required to be set apart for payment to Humboldt County. It is simply presented in the answer in this wise: " Respondent denies that at the time of the making of the alleged demand, to wit, on the ―― day of February, A.D. 1870, or at any time prior or subsequent thereto, or at the time, there was, has been, or now is, the sum of three thousand dollars, or any other sum, derived from the revenues of Churchill County for the fiscal year ending the thirty-first day of December, A.D. 1869, or from any other source, for any other time, in the county treasury of Churchill County, over and above the sums specifically appropriated to pay the salaries of the county officers of Churchill County, and claims audited and allowed long prior to the passage of the Act hereinbefore mentioned, on the twenty-seventh of February, A.D. 1869." Here is an averment showing no impairing of the obligation of contracts. The auditing and allowing of a claim gives the holder no lien upon or right to any money in the treasury, or which may come into it. It is the order or warrant of the auditor which gives that right; no claim against a county being allowed to be paid except upon such order or warrant, and the law declaring that warrants shall be paid in the order of their presentation and registration. But no where in the answer is it alleged or shown that the payment of any *warrant or order* would be delayed or deferred by reason of the appropriation made by this law. And it is quite probable no creditor acquires any vested right until the money has actually come into the treasury, and thereby become subject to the payment of his order. However, should it be admitted that the holders of such claims against the county become vested with any

rights to money in or to come into the treasury, still, even that would be of no avail here, for it is not charged or in any wise made to appear that there is not a surplus of three thousand dollars after the payment of all such claims; the form of the denial in the answer being, that there is not that sum of money in the treasury " over and above the sums specifically appropriated to pay the *salaries of the county officers* of Churchill County, and claims audited and allowed" prior to the passage of the Act. Now we have been unable to find any law making the setting apart of this three thousand dollars dependent upon prior payment of the county officers. The commissioners are absolutely required to set the money aside for the benefit of Humboldt County. The sum of three thousand dollars is unconditionally required to be set apart. It is in no way made subject to the payment of the salaries of county officers. Of course, the payment of all salaries accruing subsequent to the passage of the law must be deferred, and made subject to the appropriation under this law. Nothing is clearer than that the payment of all ordinary claims against a county is subject to any specific appropriation and setting apart of the revenues of the county for any designated purpose, unless such appropriation interfere with some prior vested right to the revenues or money in the treasury. It certainly cannot be claimed that the county officers of Churchill had any vested right to its revenues for salaries at the time this Act was adopted, for salaries subsequently to accrue. The Legislature undoubtedly has the power to direct that certain claims against the county shall have a preference over all others which are not so situated as to give the holder a vested right to money in or to come into the treasury at the time of legislative action. It is not shown that the county officers had any such vested right to the money required by this law to be set aside on the twenty-seventh day of February, when the Act in question was adopted. The appropriation and setting apart of the three thousand dollars to be paid to Humboldt was not therefore subject to the payment of the county officers, and, *non constat*, that there is not the sum of three thousand dollars in the treasury in excess of that which may be required to pay all claims against the county except their salaries. If, then, sufficient money was realized from

the revenues over such as might be required to pay such vested demands as might be existing against the county when the Act of the Legislature was adopted, there is no force in this objection. The affidavit upon which the alternative writ was issued avers, that of the revenue of said county of Churchill for the fiscal year ending December 31st, A.D. 1869, there was a sufficient sum paid into the treasury of Churchill County, over and above all sums otherwise specifically appropriated, to pay the claim and demand of Humboldt County. All revenues not so specifically appropriated being subject to the appropriation made by this Act, the averment was clearly all that could be required. It is in effect an averment that there was three thousand dollars in the treasury subject to the appropriation made by the Legislature.

III. The commissioners have no discretion respecting the duties imposed by the law. They are unqualifiedly and unconditionally required to do a specific act, to appropriate three thousand dollars for a designated purpose. In such case, undoubtedly, the writ may and should command the performance of such duty as required by law. Where any discretion is to be exercised by an officer as to the manner in which an act may be done, or rather when the thing desired to be done depends upon the judgment of the officer, in such case the writ will not control his discretion, but only command him to act, without in any way interfering with the manner of his action. When, however, as in this case, a specific act is absolutely required to be done, with no discretion given to the person or persons required to do it, the writ may command the doing of the very act itself. (24 N. Y. 121.)

IV. Was a demand upon the commissioners of Churchill County to set apart the money necessary to be made before the writ could properly issue ? Clearly not. The duty imposed upon them is clear and specific. When they failed to perform it as required, the relator became entitled to the writ. There are cases, it is true, where a demand may be indispensable. If, for example, the performance of the duty sought to be enforced is of a character that could not be expected to be performed until demanded, the writ should not isssue until demand made. Such are the cases re-

ferred to from California. In a case of this kind, however, where the law unconditionally requires of public officers the doing of a specific act, it is held that no demand is necessary. (*Commonwealth ex rel. Middleton* v. *The Commissioners of Alleghany County*, 37 Penn. State R. 237.)

V. Nor do we see how an ordinary action at law will afford the relator the full, speedy and adequate remedy to which it is entitled. This is the only plain, speedy and adequate remedy known to us whereby the Commissioners can be compelled to perform the duty imposed upon them, and in similar cases it has been held the proper remedy.

VI. No Court has the right to annul or set aside a law, except upon constitutional grounds. (See *Gibson* v. *The Board of County Commissioners of Ormsby County*, 5 Nev. 283.) Hence, any misunderstanding between members of the Legislature respecting its adoption, or even fraud in procuring its passage, cannot be inquired into by the Courts. So far as the Courts are concerned, the statute must be taken as expressing the free will and wish of the Legislature, whatever may have been the means employed to secure its adoption, and irrespective of any agreements or understanding had between members. Such matters the Courts have no power of reaching.

The peremptory writ must issue in accordance with the prayer of the relator.

JOHNSON, J., did not participate in the foregoing decision.