THREADGILL *et al.* v. CROSS, *Secretary of State.*

No. 1452.   Opinion Filed May 10, 1910.

(109 Pac. 558.)

**MANDAMUS—Secretary of State—Ministerial Duties—Filing Initiative Petitions.** In a mandamus proceeding to compel the Secretary of State to perform the purely ministerial duty imposed upon him by the statute and the Constitution to file initiative petitions for the submission of an amendment to the Constitution to a vote of the people, respondent will not be permitted, as a part of his defense, to question the validity of such proposed amendment upon the ground that it is violative of an act of Congress, the terms and conditions of which have been accepted by the state, and for that reason will be void, if adopted.

(Syllabus by the Court.)

Application by John Threadgill and Henry Braun for writ of mandamus to Bill Cross, Secretary of State. Writ awarded.

*Guthrie & Cardwell* and *Stuart, Gordon & Liedtke,* for plaintiffs.

*H. T. Laughbaum* and *Devereux & Hildreth,* for defendant.

HAYES, J. This is an original proceeding in this court for a writ of mandamus to the Secretary of State ordering and directing him to file certain initiative petitions requesting that a certain proposition entitled: "An act proposing an amendment to the Constitution of the state of Oklahoma, by amending section 7, article 1, of the Constitution, repealing the separate article of said Constitution relating to prohibition, submitted by the Constitutional Convention to the people of the proposed state of Oklahoma at the election held on September 17th, 1907, and adopted by the

people," be referred to the electors of the state for their approval or rejection, which petitions the Secretary of State has refused to file.

Respondent in his return to the alternative writ sets up as his defense and only reason why he has refused to file said initiative petitions tendered to him by the relators for filing that at the time of the admission of the territory of Oklahoma and Indian Territory to statehood the provisions of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267) required the Constitutional Convention of the proposed state of Oklahoma to pass by an ordinance irrevocable provisions prohibiting the sale of liquors in that part of the state formerly Indian Territory for a period of 21 years, and thereafter until the people of the state should otherwise provide; that the Constitutional Convention did accept this provision of the enabling act by an ordinance irrevocable. For this reason he contends that the proposed amendment to the Constitution, if submitted to the people and ratified by them, would be void. He also contends it would be void for the further reason that certain treaties entered into by the United States with the Indian tribes prohibiting the sale of liquors in the territory formerly occupied by the Five Civilized Tribes are still in force in that territory, and that the acts which it is sought by this petition to require him to perform would tend to violate said treaties.

Section 3 of the act of Congress approved June 16, 1906, commonly known as the "Enabling Act" (chapter 3335, pt. 1, 34 Stat. 367), required the Constitutional Convention of the proposed state of Oklahoma to provide in the Constitution to be prepared and submitted by said convention that the manufacture, sale, barter, or giving away or otherwise furnishing, except as otherwise provided in the act, of intoxicating liquors within those parts of the proposed state known as the Indian Territory and the Osage Indian reservation and within any other parts of the said state which existed as Indian reservations on the 1st day of January, 1906, shall be prohibited for a period of 21 years from the date of

the admission of the state into the Union, and thereafter until the people of the state shall otherwise provide by amendment of the Constitution and proper state legislation. Section 22 of the same act provides that the Constitutional Convention shall by ordinance irrevocable accept the terms and conditions of the act. The Constitutional Convention did accept the terms and conditions of this act as required by said section, and, in full compliance therewith, adopted as a part of the Constitution section 7, art. 1, which is almost in the exact language of the enabling act, relative to the prohibition of the sale of intoxicating liquors in certain parts of the state.

There is no difference between counsel upon the questions of law which this proceeding presents for our determination. Those questions are as follows: First· Will the proposed amendment which relators seek to have referred to the people of the state for their approval or rejection be void if ratified by the people, because it is in conflict with the terms and provisions of the enabling act? Second. May respondent in this proceeding for mandamus to compel him to perform a purely ministerial duty set up as a defense that said proposed amendment will be void if ratified?

Since it will be unnecessary to determine whether the proposed amendment would be void although ratified by the electors, if it be determined that respondent may not plead as a defense the invalidity of the proposed amendment, we shall consider the second question first. Section 11, art. 2, Const. (page 17, Snyder's Constitution of Okla.), being the first section of the Bill of Rights declares that all political power is inherent in the people, and that they shall have ,he right to alter or reform the government whenever the public good may require it; provided, such change be not repugnant to the Constitution of the United States. The Constitution also provides the procedure by which such alterations in the government may be made. Fifteen per centum of all the legal voters have the right to propose amendments to the Constitution by petition (section 2, art. 5, p. 135, Snyder's Const.), or such

change may be proposed by a majority of all members elected to each of the two houses of the Legislature (section 1, art. 24, p. 378, Snyder's Const. Okla.) ; and, when any amendment proposed by either of said methods has been ratified by a majority of those voting at the election at which it is submitted, it becomes effective. When initiative petitions submitting a proposed measure to the people for their ratification or rejection are offered to the Secretary of State for filing, it is his duty to file same. Section 3675, Comp. Laws Okla. 1909; section 3, art. 5, p. 146, Snyder's Const. Okla. This duty imposed upon the Secretary of State is purely ministerial, and is mandatory. *Norris v. Cross,* 25 Okla. 287, 105 Pac. 1000. About the nature of this duty there is no controversy between counsel, and can be none. The validity of the statute or of the constitutional provision which imposes upon the respondent the duty of filing initiative petitions offered by the electors of the state in the exercise of their power to amend the Constitution or to initiate or refer legislative propositions is not questioned, but it is insisted that the Secretary of State, when such petitions are presented to him for filing, has the right to look to the contents of the proposed measure to be submitted to ascertain whether the same, when ratified, will be void because in violation of a compact with the federal government or of the federal Constitution, or some law enacted in pursuance thereof; and, if it will be void for such reason, to refuse to discharge the duty prescribed by the statute.

Whether respondent in a mandamus proceeding may set up the unconstitutionality of a statute as his defense there is some conflict among authorities. That a provision of a state Constitution or a legislative enactment of a state that violates the Constitution of the United States is no law at all, and binds no one, is too elementary to require argument to establish, but there is another equally well-established and recognized rule that provisions of state Constitutions and statutes are presumed by the court to be valid, until the contrary is made plainly to appear, and that a person who seeks to have such enactment declared unconstitutional

must show that his rights are affected by the alleged invalid act, and that he has an interest in defeating it.

Courts do not lightly declare invalid legislative enactments made by the people or by their authorized representatives. An act of the legislative department of the government is clothed with the presumption that it is valid, and its constitutionality will not be considered and determined by the courts as a hypothetical question. It is only when a decision upon its validity is necessary to the determination of the cause that the same will be considered, and not then at the instance of a stranger, but only upon the complaint of a party whom the alleged invalid act affects. Cooley's Constitutional Limitations (7th Ed.) p. 232.

In *Wellington v. Petitioners*, 16 Pick. (Mass.) 87, 26 Am. Dec. 631, Mr. Chief Justice Shaw, speaking for the Supreme Court of Massachusetts, said:

"*Prima facie*, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law in the conclusion that such an act is not void, but voidable only; and it follows, as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only is it necessary to go, in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called on to interpose."

*County Commissioners of Franklin County v. State ex rel. G. A. Patton et al.*, 24 Fla. 55, 3 South. 471, 12 Am. St. Rep. 183, was a mandamus proceeding to require the county commissioners to comply with a statute requiring them to receive and keep election returns of an election at which the question was submitted whether the sale of intoxicating liquors should be prohibited in the county. The board of county commissioners refused to receive the returns,

and attempted to defeat the action against them upon the ground that the statute imposing the duty was unconstitutional. The court said:

"The duty of the commissioners being merely to receive and keep in their official custody the returns, as indicated, such duty involves no consideration by them of the legality of the election held under their call, nor does it permit them to raise before us the question of such legality as a reason for not performing their stated function; nor does its performance decide or conclude anything as to the legality of the election, but merely preserves the evidence of the actual result of the same as shown by the returns. The statute has not given, even if it could do so under our Constitution, to them the power to decide any such question, nor is this a proceeding for us to decide it in, nor are the proper parties before us. As county commissioners they are not charged with the duty of raising the question in behalf of those who may have personal interests which the enforcement of the nineteenth article of the Constitution may affect. If they have such personal interests themselves, these interests do not attach to their official duties as commissioners, and cannot be permitted to stand in the way of their performance. If there be any person in Franklin county whose personal interests the enforcement of such article affects, the county commissioners are not the tribunal authorized to pass upon either the validity of the act or the legality of its enforcement. The validity of such act, and of the proceedings thereunder, will be considered when parties having interests affected by either are before us."

In *Commonwealth v. James,* 135 Pa. 480, 19 Atl. 950, respondent, who was clerk of the court of quarter sessions, was compelled to act under the provisions of a statute authorizing the formation of school districts and file the resolution of the board of school directors accepting the provisions of the act, and the court refused to permit him in his defense to question the constitutionality of the act making it his duty to perform such duty.

In *Jones v. Black,* 48 Ala. 540, the court said:

"A party who seeks to have an act of the Legislature declared unconstitutional must not only show that he is or will be injured by it, but he must also show how and in what respect he is or

will be injured and prejudiced by it.   Injury will not be presumed. It must be shown."

In *State ex rel. New Orleans Banking Co. v. Heard,* 47 La. Ann. 1679, 18 South. 746, 47 L. R. A. 512, it was held that an executive officer of the government has no authority to decline the performance of a purely ministerial duty which is imposed upon him by law on the ground that the law is unconstitutional.

In *Thoreson v. State Board of Examiners,* 19 Utah, 18, 57 Pac. 175, the State Board of Examiners refused to receive, audit, and allow certain claims which it had been directed to do by statute of the territory of Utah.   In answer to the refusal of the board to discharge its duty upon the ground that the statute was void the court said:

"To allow mere ministerial officers, who have no direct personal interest in the matter, to refuse to perform an act clearly pointed out and made their official duty, by a statute, on the ground that the performance of the act would violate the Constitution, would be establishing a very dangerous precedent, and one not warranted by the authorities.   It would be deciding a constitutional question, affecting the right of third parties, at the instance of officers whose duties are merely ministerial, and who have no direct interest in the question, and cannot in any event be made responsible.   We are of the opinion that this ground of objection furnishes no excuse for the failure of the board to perform a plain ministerial duty prescribed by the Governor and legislative assembly of the state, and that we are not authorized to pass upon the constitutional question so raised in a proceeding by mandamus."

Among the other authorities supporting the rule of the foregoing cases may be cited the following:   *Smyth v. Titcomb,* 31 Me. 273; *Wright v. Kelley,* 4 Idaho, 624, 43 Pac. 565; *People ex rel. Attorney General v. Salomon,* 54 Ill. 39; *State ex rel. Nichols v. City of New Orleans,* 41 La. Ann. 156, 6 South. 592; *Ames v. People,* 26 Colo. 83, 56 Pac. 656; *State ex rel. Dillion v. County Court,* 60 W. Va. 339, 55 S. E. 382; *Capito v. Topping,* 65 W. Va. 587, 64 S. E. 845, 22 L. R. A. (N. S.) 1089.   In the last-mentioned case it was said:

"When a mandamus is sought to compel an officer to perform a duty enjoined by statute, the court will not generally permit the officer to ascertain that the statute is unconstitutional"—citing several cases from that court.

*Brackston County Court v. State of W. Va. ex rel.,* 208 U. S. 192, 28 Sup. Ct. 275, 52 L. Ed. 450, was a proceeding for mandamus brought by certain residents and taxpayers of Brackston county, W. Va., to compel the county court of that county to change the assessment of property to conform to the requirements of certain acts of the Legislature of that state. The county court made answer in which one of the grounds of defense was that the act sought to be enforced impaired the obligation of contracts in violation of the federal Constitution. Mr. Justice Brewer, delivering the opinion of the court, said:

"It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their nonperformance was equally so. He neither gained nor lost anything by invoking the advice of the Supreme Court as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers, and in this particular case the case is analogous to that of *Caffrey v. Oklahoma,* 177 U. S. 346 [20 Sup. Ct. 664, 44 L. Ed. 799]. We think the interest of an appellant in this court should be a personal, and not an official, interest, and that the defendant, having sought the advice of the courts of his own state in his official capacity, should be content to abide by their decisions."

There is a line of cases in which the validity of statutes have been determined in mandamus proceedings at the instance of the respondent without it having been questioned or decided that the respondent had the right to have such questions determined in that character of proceeding. The following cases belong to that class: *State ex rel. Hunt v. Meadows,* 1 Kan. 90; *Williams v. Taylor,* 83 Tex. 670, 19 S. W. 156; *Citizens' Bank v. Wright,* 6 Ohio St. 318; *State ex rel. Eastman v. Warren County,* 17 Ohio St. 558; *Humbolt County v. Churchill County,* 6 Nev. 30.

The foregoing cases can have no application to the case at

bar, for the reason that in this case the right of respondent to question the validity of the proposed measure is questioned and opposed vigorously by relators. There are cases, however, in which the right of a respondent to question the legality of a statute as a part of his defense has been directly passed upon, and in which it is held that such right exists. Of this class of cases *Van Horn v. State ex rel. Abbott,* 46 Neb. 62, 64 N. W. 365, is a leading case. The court in that case planted its decision that an officer may refuse to perform a plain ministerial duty imposed by an unconstitutional statute upon the ground that an unconstitutional statute is no law and can bind no one. The court in that case gave no notice to and made no discussion of the other rule of law which permits courts to declare a statute unconstitutional only at the instance of a party whose rights are affected. If the rule of that case should be adopted as the law applicable to this case, the most petty ministerial officer of the state may ignore any law which he deems to be invalid; and if he happens to be an election officer, he may, upon the eve of an election, stop the machinery of a state for making effective the right of the people to amend their fundamental law or to enact any legislative provision under the initiative or referendum provisions of our Constitution, because he may think the law prescribing his duty is invalid, or that the proposed measure will be invalid. We do not believe the rule of that case to be supported by the weight of authority, or by the better reason. There is a large number of cases in which the validity of a statute has been determined at the instance of the relator in a mandamus proceeding who is seeking to enforce some right which he will not be entitled to if the statute questioned is valid; but these cases may generally be distinguished from the cases which deny this right to a respondent, because of the fact that in the former class of cases the person complaining of the statute is affected in his rights or property by the statute, and he has a personal interest in having it declared invalid.

There are other cases which in effect hold that if the nature of a respondent's office is such that he is required to raise the ques-

tion of the validity of a statute imposing a duty upon him, or if his personal interest is such as will be affected by the statute, he may contest its validity in a mandamus proceeding brought to enforce the performance of the duty; but we do not deem it necessary to cite or comment upon those cases, for we do not regard them in point in the case at bar. There is nothing in the statutes of this state that expressly or by implication makes it the duty of the Secretary of State to question the validity of any proposed legislative enactment offered by means of the initiative or referendum as an amendment to the Constitution or for adoption as a statute of the state. Nor has it been shown in this case that respondent will in any way be affected in his rights or property by the proposed amendment, if it be adopted. He has no interest in the matter whatever other than that of a public officer. That interest is not such as the law recognizes as giving him the right to question the validity of the proposed measure.

There is another reason why respondent cannot be heard to complain that the proposed amendment will be invalid which involves the structure of the state government and the relation of its three several departments. One of the fundamental principles of the republican form of government as it exists in the several states of the Union is that the powers of the state government are divided into three departments which are separate, equal, and independent of each other. Section 1, art. 4, p. 119, Snyder's Const. provides that the powers of the government of this state shall be divided into three separate departments, the legislative, executive, and judicial, and, except as provided in the Constitution, the legislative, the executive, and judicial departments shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others. In the legislative department of the government is vested the power of enacting all laws. To that department is intrusted the determination of what laws shall be enacted, and what laws shall not be enacted. It must in the first instance determine whether a proposed measure is valid or invalid, and in doing so it will not be presumed that the members

of that department, whether they be the electors at the polls, or the members of the Legislature, will enact or attempt to enact legislative measures that they know are violative of the state Constitution or of the federal Constitution, but that they will act from patriotic motives and endeavor to adopt such laws only as will best serve the public good, keeping in mind the limitation upon their powers fixed by the Constitution of the state and the federal Constitution as the supreme law of the land. When such department has acted upon a proposed measure and adopted same, it thereby becomes clothed with the presumption that it is a valid enactment and with its validity the executive and judicial departments have nothing to do, until it becomes the duty of these respective departments to participate in the construction or enforcement of such statute. The duty of determining what law shall be enacted and what law shall not be enacted rests neither upon the executive nor the judicial department. When the people of a state are engaged in proposing and adopting a Constitution or amendments thereto, they are exercising a legislative power and function of the highest order; and, while so engaged, they constitute part of the legislative department of the state. *Frantz et al. v. Autry*, 18 Okla. 561, 91 Pac. 193; *State ex rel. Cranmer v. Thorson*, 9 S. D. 149, 68 N. W. 202, 33 L. R. A. 582. The authorities are numerous which hold that the courts cannot control by injunction or any other writ the exercise of a purely legislative or executive power, and the principle which underlies all of such decisions is stated by the court in *Wright v. Defrees*, 8 Ind. 298, to be: .

"The powers of the three departments are not merely equal. They are exclusive in their respective duties assigned to each. They are absolutely independent of each other."

In *State ex rel. Cranmer v. Thorson, supra,* it was sought to enjoin the Secretary of State from certifying to the county auditors a question proposed by a joint resolution of the Legislature as an amendment to the Constitution, upon the ground that the submission would be inoperative. The court in the opinion said:

"Power to amend the Constitution belongs exclusively to the Legislature and electors. It is legislation of the most important character. This court has power to determine what such legislation is, what the Constitution contains, but not what it should contain. It has power to determine what statutory laws exist, and whether or not they conflict with the Constitution, but it cannot say what laws shall or shall not be enacted. It has the power, and it is its duty, whenever the question arises in the usual course of litigation, wherein the substantial rights of any actual litigant are involved, to decide whether any statute has been legally enacted, or whether any change in the Constitution has been legally effected, but it will hardly be contended that it can interpose in any case to restrain the enactment of an unconstitutional law."

In the procedure for amending the Constitution of this state, which can only be effected by an election thereon, it becomes necessary for the people of the state to call into their service certain of their executive officers, and require them to perform certain ministerial duties. If the placing of such duties upon such ministerial officers gives in turn to them the right and power to question the validity of any or all the amendments proposed, and to refuse to act when they decide that any such proposed measure will be invalid, then the most subordinate ministerial officer of the state having any duties to perform in connection with such an election may himself do indirectly that which he could not have, nor any other citizen of the state have the courts do by proceeding instituted for that purpose, to wit, pass upon the validity of the proposed measure and stay the election by a judicial decree, if it be determined that the proposed measure is invalid.

We have not overlooked the argument that if the proposed amendment in the case at bar will be void because in conflict with any compact between the state and Congress, authorized by the federal Constitution, and if the Secretary of State may not refuse to file the petitions, a great expense will be incurred to the people of the state in holding a useless election. The same argument could be applied with equal, if not greater force, to sustain the right of the courts to enjoin the enactment of any void act of the Legislature, because it not infrequently happens that a Legislature

consumes much time and incurs much expense to the state in pass-
ing laws which they think to be valid, but which the courts de-
termine at the instance of some interested suitors whose rights
have been encroached upon to be invalid. It may be that a govern-
ment all of whose powers are administered by one department may
be administered with less expense than a government of the kind
existing in this state and in the other states of the Union, in which
the powers are exercised by different departments; but, if so, it
must be presumed that the people in adopting the present form of
government did so with knowledge of that fact and notwithstand-
ing preferred that the powers of their government be administered
by these separate and independent departments, and that the leg-
islative department be given power in the first instance to deter-
mine what laws shall be passed, leaving it to the other departments
to question or determine the validity of such laws only when they
come to be enforced against some one whose rights they affect.
The people of the state in the exercise of their legislative power to
amend the Constitution have not yet expressed their opinion upon
the proposed amendment. They will do that at the election to be
held thereon. If in the exercise of their legislative discretion they
conclude that the proposed amendment violates any valid compact
with the federal government or any provision of the federal Con-
stitution, they will no doubt in the observance of the duties of
good citizenship, for that reason alone, reject the measure. If, on
the other hand, they determine it to be a valid measure and adopt
it, then, and not until then, will the judicial and executive de-
partments have the power and duty devolving upon them to deter-
mine its validity and enforce its provisions.

Having decided that respondent may not defend against this
proceeding by questioning the validity of the proposed amendment,
we refrain from expressing any opinion whatever upon what the
effect of such amendment will be, if adopted. That question can
and will be determined only when it is presented to this court in

the course of litigation by some litigant whose rights are involved thereby.

The peremptory writ is awarded.

All the Justices concur.