State *v.* McNally.

---

## COUNTY OF WALDO.

---

### STATE *versus* McNALLY & al.

That a person was a public officer, may be shown, in a suit to which he is not a party, by proof that he had been in the practice of acting as such an officer, and he is competent, as a witness, to prove such a practice.

A warrant issued by one as a justice of the peace, purporting to be founded on a complaint sworn to before him, furnishes of itself a legal presumption of his authority.

In a criminal trial, the complainant is not compellable to state, as a witness, the reason which induced him to believe the charge made in the complaint.

A precept or process, though voidable for irregularity or mistake, is a protection to the officer who serves it, if the magistrate, by whom it was issued, had jurisdiction of the subject matter.

State *v.* McNally.

A warrant, which the statute authorizes "any sheriff, city marshal or deputy" to serve, may be executed by a deputy of the sheriff, as well as by a deputy of the marshal.

It is not necessary that a magistrate's warrant, issued upon a penal statute, should be under seal, unless the statute expressly require it.

ON EXCEPTIONS from the *District Court*, RICE, J. presiding.

INDICTMENT of five counts. It charged substantially a conspiracy to prevent by force the execution of a legal warrant, which it recites at full length.

The warrant had upon it a small piece of paper annexed by a wafer, and was directed to the sheriff or his deputy or the constable of Frankfort. So far as material here, it was as follows : —

" Whereas, (naming six persons,) all being voters in said town of Frankfort, on oath complained to me, that they had reason to believe and did believe that Captain Sanford of the steamer Boston, against the peace, and contrary to the form of the statute in such case made and provided, *then had and kept spirituous and intoxicating liquors intended for sale, deposited in said steamer Boston, situated in Frankfort aforesaid, occupied by him, said Sanford, said Sanford not being appointed as agent thereof to sell therein spirits, wines or other intoxicating liquors, whereby said liquors may have become forfeited to be destroyed, and that said Sanford has forfeited, &c.,* and prayed that due process might issue to search there for the same.

" Therefore in the name of the State of Maine you are required to enter the steamer Boston and search there for the same, *and if* SUCH *liquors be found therein to seize and safely to keep the same* in some proper place of security until final action and decision be had on said complaint, and that you summon said Sanford forthwith to appear at a Court to be holden at my office in Frankfort, *at such time as you may appoint,* to show cause if any he have, &c.

" Archibald Jones, Justice of the Peace."

The government offered evidence tending to prove that Miles Staples, being a deputy of the sheriff of the county

of Waldo, and having in his possession for service the paper purporting to be a warrant, set forth in the indictment, went on board the steamer Boston, then lying at Frankfort in said county, of which steamer McNally was mate, and Taylor agent, and claimed a right, by virtue of said paper, to search for spirituous and intoxicating liquors, as there directed, and was permitted by Taylor and McNally so to do.

That Staples proceeded to search for liquors on the main deck of the steamer, and found there some ten or twelve casks of spirituous liquors, which he marked with chalk with the word "seized." That he afterwards ordered McNally and Taylor, after he had read his precept in their hearing, to assist him in removing said casks from the steamer, that they refused, and ordered him to leave the boat. That Staples then called to others to come on board and aid him in removing the casks, and immediately a forcible resistance was begun by McNally and Taylor and the crew of the steamer, and Staples and another acting under him, were assaulted and beaten, and were prevented from removing the casks. There was other evidence, tending to prove the conspiracy as against these two defendants.

The government also called as a witness, for the purpose of proving the alleged conspiracy, one John Adams, who testified that he, acting as a constable of Frankfort, and having in his possession a warrant, about three hours after the arrival of the steamer at Frankfort, went on board of her and by virtue of said warrant made search for intoxicating liquors on the main deck, and there found several casks which he seized as containing such liquors, that he was prevented from removing them by the threats of Taylor and the hostile attitude of McNally and the crew.

The defendants objected to Adams being allowed to testify to his acts as a constable, until it was proved by competent evidence that he was legally authorized as such. They objected also to the competency of Adams as a witness to prove his own authority, there being no other evidence upon that point. But the Court overruled the objection.

State v. McNally.

The only evidence offered to show that Jones, when he signed said paper, had legal authority so to do, was the testimony of Jones that he acted as a justice of the peace, and was such. The defendants objected to the admissibility and to the competency of that testimony, but the Court overruled the objection.

The defendants introduced evidence, tending to show that said casks, which Adams and Staples attempted to remove, were brought from Boston on freight in said steamer on her last trip, and had not been landed; and Staples on cross-examination testified that he so understood it, and offered to pay the freight at the time he attempted to remove them.

The defendants also proposed to inquire of Wm. L. Chase, a witness produced by government and one of the complainants in the complaint, "what reason he had for believing at the time he made the complaint, that the charges therein were true." — The County Attorney objected to the inquiry and the Court ruled that the witness was not bound to answer, but might if he chose, or he might decline if he chose, and the witness refused to answer.

The same interrogatories were put to R. B. Curtis, another of the complainants, who was also a witness for the government, who said he had no objection to answer, but the County Attorney objected, and the Court excluded the evidence.

The defendants' counsel then asked the witness whether the complaint was not made with reference to, and for the purpose of seizing liquors, which had been put on board the steamer at Boston, and brought on freight? The County Attorney objected, and the Court ruled that he might answer or decline as he chose, and the witness declined to answer.

It appears that the steamer was a regular licensed coaster plying between Boston and Bangor; and that she arrived at Frankfort on her way to Bangor, and was prevented by the ice from proceeding to Bangor, and the captain was intending to return to Boston on the next day.

It was contended on behalf of the defendants that the acts,

which they were charged with conspiring to do, were not illegal, but were a lawful and necessary defence of property, committed to their charge as common carriers; and that proceedings for the purpose of seizing the liquors, were unauthorized by law, and that the attempt to remove the same was illegal, because : —

1. So much of the Act of 1851, entitled " An Act for the suppression of drinking houses and tippling shops," as is relied on as authority for any of the said proceedings, is unconstitutional and void.

2. And, if constitutional, said Act does not authorize the proceedings set forth in the indictment, nor the proceedings of Staples on board the steamer.

3. The Act did not authorize the seizure of liquors *in transitu* or on freight.

4. The Act does not empower a deputy sheriff to serve warrants for the search and seizure of liquors.

5. The warrant set forth did not command or authorize any one to search for or seize on board the steamer any liquors, which were there on freight.

6. The warrant was not in accordance with the requirement of the Act nor according to law.

7. The warrant was illegal and void, in that it commanded the officer to appoint such time as he might choose for a hearing upon the complaint.

8. The warrant was not, and did not purport to be, under the seal of said Jones.

The defendants requested the Court to instruct the jury that for each of the said eight reasons, the attempt to remove the liquor from the steamer was illegal ; and that, therefore, the indictment could not be maintained. The Court declined to give the instructions as requested, but instructed the jury that, if any of the defendants entered into a conspiracy together, or with other persons, not named in the indictment, to resist Staples in the execution of the warrant, they were to be found guilty.

The jury returned a verdict against McNally and Taylor, and they excepted.

*Rowe & Bartlett,* for the defendants.

The eleventh section of the Act of 1851, "for the suppression of drinking houses and tippling shops," is unconstitutional.

It makes the issuing of search warrants a ministerial, instead of a judicial act ; and permits them to be issued without probable cause, in violation of Article 1, § 5, of the Bill of Rights.

At common law, "search warrants are judicial acts, and must be granted upon examination of the facts." 4 Burns' Just. 104, Search-warrant ; 4 Burns' Just. 329, Warrant ; Chitty's Criminal Law, [*65.]

The constitution, in the article referred to, recognizes and confirms this view, when it requires the existence of probable cause, as a condition precedent to the issuing of them. Probable cause is a judicial inference from certain facts legally proved. Whether it exists, is a matter of judicial inquiry. 2 Greenl. Ev. § 454 ; Chitty's Crim. Law, [*33 ; ] *Rex* v. *Baker,* Strange, 316.

*This* statute requires the magistrate to issue his warrant without making such inquiry. Its language is imperative, — "shall issue" on complaint of three voters, &c. By the constitution and by the common law, a search warrant must be founded on the judgment of a magistrate. By this Act, it is founded on the opinion of the prosecutors, without, and, it may be, even in opposition to, the judgment of the magistrate who issues it.

It authorizes the issuing of warrants to seize, without special designation of the thing to be seized. *Sanford* v. *Nichols,* 13 Mass. 287.

It requires a seizure and removal of liquors, lawfully kept for lawful purposes, and against which there is no complaint, if they happen to be found in the same building with suspected liquors ; of liquors belonging to one man, on complaint against liquors belonging to another ; an unreasonable seizure.

It requires the seizure and removal of liquors which are not liable to forfeiture, even when kept with intent to sell; of liquors of foreign manufacture, in the original packages in which they were lawfully imported, which are expressly excepted by the Act itself from forfeiture or destruction; an unnecessary, useless and vexatious seizure.

In violation of the first clause of the constitution, it authorizes the taking of property from the possession of the owner, by the officers of the law, under the color of process, and then declares it (section 16,) to be out of the protection of the law; forbids redress for its conversion or wanton destruction; and makes no provision for its restoration, even if the owner shall be adjudged entitled to it.

It authorizes the seizure, condemnation and destruction of property by a judgment of Court, without notice to the owner. It imposes upon the ministerial officer, to whom the warrant is committed for service, the judicial duty of inquiring and deciding who is the owner of the property seized; and if such officer decides wrongly and summons the wrong party, and the liquor, in consequence thereof, shall be condemned in default, the owner is without remedy.

It authorizes a conviction and punishment upon a criminal prosecution, without any trial, or even notice to the party to be affected, and without accusation. Whether liquors are liable to destruction under this Act, depends, not on the character or description of the liquors, nor on the place or the manner, in which they are kept, nor on any thing that has previously been done with them, but solely on the intent with which the owner keeps them. Their forfeiture is part of the penalty which the law imposes upon the criminal intent of the owner. Before he can be convicted of such intent, he has a right to a trial; before he can be punished, he must, at least, be accused.

This whole provision for the seizure is senseless. If the owner appears, no judgment of condemnation can be rendered of any liquors over five gallons in quantity, without his consent; for the Act provides (section 13,) that on conviction by

the jury, after an appeal, the appellant shall be adjudged a common seller and be subject to punishment as such. Such judgment cannot be rendered, for it imposes a penalty upon the exercise of the constitutional right of appeal to a jury. No other judgment can be rendered, for the offence, process and proceedings are alike unknown to the common law; and the Act gives the Court no power to affirm the judgment of the justice.

Further, any one, not the owner or keeper of the liquors, may defeat the whole proceedings. He has but to appear, claim the liquor, appeal, and, as no conviction of keeping with guilty intent can be had against him, the whole proceedings must fail.

It subjects a citizen to the hazard, cost and disgrace of a criminal prosecution, and deprives him of the possession of his property, upon the suspicion of unofficial and irresponsible persons, without the sanction of any officer of the law, or any legal investigation; all which is at war with the spirit of the constitution, subversive of well settled principles of the common law, and in derogation of common right.

The Act does not empower a deputy sheriff to serve warrants to search for, and seize liquors. That officer is not mentioned in section 11; and neither sheriff or deputy sheriff are mentioned in section 14. *Wood* v. *Ross*, 11 Mass. 277; See Mass. Law, Act of May 18, 1852, § 14.

The fact that the warrant is directed to such an officer gives him no authority to serve it. *Reynolds* v. *Orvis*, 7 Cow. 269; *Grant* v. *Bagge*, 3 East, 128; *Commonwealth* v. *Foster*, 1 Mass. 488.

The warrant is no justification to the officer, if the magistrate in issuing it, exceeds his jurisdiction, as to the place to be searched, or as to the process. *Sanford* v. *Nichols*, 13 Mass. 288–9; 1 Conn. 40; 5 Wend. 181; Com. Dig. Imprisonment, H. 9; *Wise* v. *Withers*, 3 Cranch, 331.

A steamboat is not "a place," or "building," liable to be searched, within the meaning of the statute. *Verba generalia*, &c., Bac. Max. Reg. 10.

A sweeping clause in a deed, refers to things of the same nature and description, &c. Lord MANSFIELD, *in Moore* v. *Magrath*, Cowp. 12.

Under 29 Car. II. c. 7, which enacts, that "no tradesman, artificer, workman, laborer, or other person whatsoever, shall do any work on Lord's day," it is held that a farmer is not a "person" within the meaning of the statute, not being a person *ejusdem generis* with those named. *Rex* v. *Whitnash*, 1 M. & R. 452; S. C. 7 B. & C. 596; and so an attorney, *Peate* v. *Dicken*, 1 C. M. & R. 422; 5 Tyrrwh, 116; so as to stage coach owner, *Sardeman* v. *Breach*, 7 B. & C. 96; *S. P. in Clark* v. *Gaskarth*, 3 Taunt. 431; Smith on Contracts, 86, [*171.] See 1 Hawk. P. C. chap. 38, § 17, and 1 Hale's *P. C. 557.*

"Building" does not include vessel, in the ordinary meaning of the term; nor is it intended to include it in the statutes. See R. S. chap. 155, § 5 and 11; Chap. 156, § 2 and 3; *Commonwealth* v. *McMonagle*, 1 Mass. 517; Stat. 1784, chap. 66; Mass. Law, Act of May 18, 1852, § 14.

Sales on board vessels are not the mischiefs to be remedied by this section of the statute. The object was to give towns power to break up, in a summary manner, all drinking establishments, intended to be permanent, within their limits.

Liquors *in transitu* are not liable to seizure. Process issues only at the instance of three voters of some town or city, against liquors, kept in some building or place in such town, and intended for sale in that building or place.

The liquors found by Staples, on board the steamer, were *in transitu*, known to be so by him. He was ordered, by his warrant, to seize only liquors kept for sale on board the Boston and in Frankfort. His attempt at removal was, therefore, a trespass, the resistance to which, on the part of defendants, was a lawful act.

This complaint, if made for the purpose of seizing said liquors *in transitu*, was a fraud upon the law, and the complainants are trespassers; and the warrant would furnish no protection to the officer, if he knew the design and aided in

the execution of it. The examination of such of the complainants as were witnesses, upon that point, should have been admitted. The witnesses should have been compelled to answer.

The process in this case exceeded the jurisdiction of the magistrate, and was not in accordance with the statute. It requires the officer to summon the keeper to appear, and to make return of the warrant, at a court to be holden at such time as he, the officer, might appoint. By the Act, the hearing must be had forthwith; and by the constitution, an accused party is entitled to a speedy trial. *Pearce* v. *Atwood*, 13 Mass. 348–9.

There is no sufficient evidence that Jones was a magistrate.

A seal is an essential part of a warrant. 4 Bl. Com. 291; 2 Hawk. P. C. 136, c. 13, s. 21; Com. Dig. "Imprisonment," H. 7; 9 N. H. 240.

There was no evidence, either in the warrant itself, or *aliunde*, that the bit of wafer attached to the warrant in this case was the seal of the magistrate, or was ever adopted by him.

It is only the seals of States, or of higher law tribunals, which are recognized by courts. Other seals must be proved. 3 East, 221; 3 Johns. 310; *Tebbetts* v. *Shaw*, 1 App. 208–9.

The testimony of Adams was improperly admitted, there being no sufficient proof that he was a constable, or had any warrant authorizing him to search or seize.

*Tallman*, Attorney General, for the State.

The opinion of the Court, SHEPLEY, C. J., WELLS, HATHAWAY and APPLETON, J. J., was drawn up by

HATHAWAY, J. — The testimony of Adams, as to his acting as constable, &c., (objected to by defendants) was properly admitted, and also that of Jones, that he acted as justice of the peace. *Potter* v. *Luther*, 3 Johns. 431; *McCoy* v. *Curtis*, 9 Wend. 17.

The testimony of Jones that he *was* a justice of the peace, was immaterial, for it appears by the warrant as copied in the

indictment, that the complaint was made to him as a justice of the peace, that he received it as such, and signed and issued the warrant in that capacity. The presumption therefore is, that he was legally authorized so to do. *Lowell* v. *Flint*, 20 Maine, 401.

The reasons which induced Chase and Curtis to believe that the charges in the complaint were true, and their purpose in making it, could have no effect upon the rights or liabilities of the defendants in this case, and their testimony upon that subject was rightly excluded. The first instruction requested and refused by the Judge presiding at the trial was, " that the acts with which the defendants were charged with conspiring to do were not illegal acts," &c. The first count in the indictment charges them with a conspiracy to commit an assault and battery upon Miles Staples, a deputy sheriff, for the purpose of preventing him from performing the duties of his office. The instruction requested was, therefore, that an assault and battery upon a deputy sheriff, to prevent his doing his duty was not an illegal act. It was properly refused.

The correctness of the instructions given, and the propriety of the refusal to give the other instructions requested, may depend upon the question whether or not the warrant, under which Staples acted, was such a precept as he was legally authorized to obey, for if it were so, he was bound to execute it and the defendants had no right to resist him.

Officers whose duty it is to execute legal processes committed to them for service, should have reasonable protection in the discharge of their duties. Where the process is void it is no justification to the officer, but where it is merely voidable for irregularity or mistake he is protected by his precept.

In delivering the opinion of the Court in *Sanford* v. *Nichols & als.*, 13 Mass. 286, PARKER, C. J. said, "It is a general and known principle, that executive officers, obliged by law to serve legal writs and processes, are protected in the rightful discharge of their duty ; if those precepts are sufficient in point of form, and issue from a Court or magistrate having jurisdiction of the subject matter ; but it is necessary, that

the precept under which the officer acts should be lawful on the face of it.

It was no part of the officer's duty to examine into and decide upon the constitutionality or construction of the statute which authorized his warrant.

It is sufficient where the magistrate has jurisdiction of the subject matter, if the process is regular on its face and does not disclose want of jurisdiction. *Savacool* v. *Boughton,* 5 Wend. 170; *Earl* v. *Camp,* 16 Wend. 562.

The counsel for defendants objected, that statute of 1851, chap. 211, § 11, by virtue of which the warrant was issued, does not authorize a deputy sheriff to serve it, and contended in his argument, that the punctuation of the printed statute sustained this objection. The language of the statute is, "said justice, &c., shall issue his warrant of search to any sheriff, city marshal or deputy."

The printer's punctuation of the published laws, might be an uncertain guide in their interpretation. We think the term "deputy," in the statute, relates to both the marshal and sheriff preceding it.

It was also contended that the proceedings for seizing said liquors were unauthorized by law, because the warrant commanded the officer to appoint such time for the hearing of said complaint as he might choose. The language of the statute is, "the owner or keeper of said liquors, &c., shall be summoned forthwith, before the justice or Judge by whose warrant the liquors were siezed." The command of the warrant in this case was "to summon said Sanford forthwith to appear at a Court to be holden at my office in Frankfort *at such time as you may appoint.*" Although this might have been an irregularity on the part of the magistrate, it did not render the warrant void and the rights and duties of the officer were not affected thereby.

The defendants' counsel also objected that a steamboat is not a "place" liable to be searched within the meaning of the statute. The language of the statute is "any store, shop, warehouse, other building or place in said city or town."

This language was evidently intended to comprehend all places (in the city or town,) in which the mischief intended to be remedied could exist.

A steamboat or vessel moored at the wharf is a place, as much as is a shop standing upon the wharf. It may be stationed there, and used for the same purposes as the shop. The defendants say the warrant was void because it was not and did not purport to be under the seal of the magistrate.

R. S. chap. 170, § 15, provides that a warrant of search for stolen goods, &c., shall be issued by the magistrate *under his hand and seal.* The statute of 1851, under which the warrant in this case was issued, provides merely that the justice shall issue *his warrant* of search. In *Padfield* v. *Cabell & als.* Willes, 411, it was held that a warrant need not be under seal unless required by the statute. In that case WILLES, C. J., said, "a *warrant* does not *ex vi termini*, imply an instrument under seal; it signifies no more than an *authority.* All the books, in which it is said that a warrant must be under seal, are founded on a case in the year books, where it is said that a justice of the peace is a Judge of record and *hath a seal* of office." A justice of the peace in this State has no seal of office.

But whether a seal was necessary or not becomes immaterial, for it appears there was a wafer attached to the warrant as a seal. Defendants' counsel insisted that "there was no evidence either in the warrant itself, or *aliunde*, that the bit of wafer attached to the warrant was the seal of the magistrate or adopted by him." A wafer attached to the warrant is the usual seal in such cases and the fact that it was there, was *prima facie* sufficient.       *Exceptions overruled.*

NOTE. — This case, though belonging to the Middle District, was argued at Bangor, for convenience of the parties.