STATE *ex rel.* CRUCE, *Governor, v.* CEASE *et al.*

No. 2039.   Opinion Filed March 7, 1911.

(114 Pac. 251.)

**CONSTITUTIONAL LAW—Statutes—Who May Determine Constitutionality.** Laws are presumed to be, and must be treated and acted upon by subordinate executive functionaries as constitutional and legal until their unconstitutionality or illegality has been judicially established.

(Syllabus by the Court.)

Application by the State, on the relation of Lee Cruce, for a writ of mandamus to Frank P. Cease and others. Writ granted on conditions.

*Giddings & Giddings,* for plaintiff.

*E. V. Rakestraw* and *Moss, Turner & McInnis,* for defendants.

KANE, J.   This is an original proceeding, praying for a peremptory writ of mandamus against the above-named defendants as county officers of Swanson county, commanding them to hold their respective offices for the transaction of official business in Swanson county at Mt. Park, as the temporary county seat of said county named by the Governor in his proclamation proclaiming the creation of said county. After the Governor issued his proclamation, wherein he certified to the election of the county

officers elected to fill the various county offices provided by law, it seems that all such officers, except the sheriff, disregarded the proclamation of the Governor designating Mt. Park as the temporary county seat of said county, and opened their respective offices at Snyder in said county, and are holding their offices there as though said town of Snyder was the county seat. The writ is prayed to require said officers to remove their said county offices from Snyder to Mt. Park, together with all the records, files, dockets, paraphernalia, and papers of whatsoever nature appertaining to said offices. The sole contention of counsel for the defendants is that section 1854, Compiled Laws of Oklahoma 1909, which provides that the Governor shall designate the county seat of a new county, "which place shall be and remain the county seat unless afterwards changed as provided by law," is unconstitutional, for the reason that it is repugnant to section 4, art. 17, of the Constitution, which provides:

"The Legislature shall provide by general laws for the creation of new counties or alternating or changing lines and the equitable division of assets and of liabilities, and the original location of county seats in such new counties: Provided, that every such question shall be submitted to the vote of the qualified electors residing in the territory to be formed into such new county or transferred to another county, and shall be approved by sixty per centum of the votes cast in said election."

We are of the opinion that this defense is not available to the defendants as county officers. It is their duty to hold their offices at the county seat designated by the Governor. As far as the record shows, they would neither gain nor lose anything by invoking the advice of the Supreme Court as to the constitutionality of the law providing for the designation of the temporary county seat. The Governor at least has colorable authority to name the county seat; the defendants, as county officers, are entirely without authority in the premises. This rule was approved by the Supreme Court of the territory in *Territory ex rel. Taylor v. Caffrey, County Clerk,* 8 Okla. 193, 57 Pac. 204, and has been looked upon with favor by this court in a case which, although

not exactly in point, is sufficiently analogous to call for a review of the opposite views which the courts have taken of this question. *Threadgill et al. v. Cross, Secretary of State,* 26 Okla. 403, 109 Pac. 558.

*Braxton County Court v. West Virginia ex rel. Dillion,* 208 U. S. 192, 28 Sup. Ct. 275, 52 L. Ed. 450, was a proceeding for mandamus brought by certain residents and taxpayers of Braxton county, W. Va., to compel the county court of that county to change the assessments of that county to conform to the requirements of a certain act of the Legislature of the state. One of the grounds of defense was that the act sought to be enforced was in violation of the federal Constitution. The Supreme Court held that, in order to avail themselves of such a defense, the interest of the appellants should be a personal, and not an official, interest. The opinion of the court was delivered by the late Mr. Justice Brewer, who, upon this point, said:

"It is evident that the auditor had no personal interest in the litigation. He had certain duties as a public officer to perform. The performance of those duties was of no personal benefit to him. Their nonperformance was equally so. He neither gained nor lost anything by invoking the advice of the Supreme Court as to the proper action he should take. He was testing the constitutionality of the law purely in the interest of third persons, viz., the taxpayers; and in this particular the case is analogous to that of *Caffrey v. Oklahoma,* 177 U. S. 346 [20 Sup. Ct. 664, 44 L. Ed. 799]. We think the interest of an appellant in this court should be a personal, and not an official, interest, and that the defendant, having sought the advice of the courts of his own state in his official capacity, should be content to abide by their decision."

In *State ex rel. New Orleans Canal & Banking Co. v. Heard,* 47 La. Ann. 1679, 18 South. 746, 47 L. R. A. 512, it was held that:

"Laws are presumed to be, and must be, treated and acted upon by subordinate executive functionaries as constitutional and

legal, until their unconstitutionality or illegality has been judicially established."

That case is fully annotated in 47 L. R. A. 512, where, in an introductory statement, the annotator, after reviewing the cases on either side of this question, concludes that:

"Upon the question of the right to ignore the statute, some decisions agree with the Nebraska court, but the trend of judicial thought appears to be with the Louisiana doctrine."

We think the Louisiana doctrine is sound. It is elementary that statutes are presumed by the courts to be constitutional until the contrary is made to appear beyond a reasonable doubt. Courts are the proper tribunals to pass upon such questions, and if they exercise such caution before declaring the statutes void, nothing would justify mere ministerial officers, who have no judicial power, to assume that the statute is unconstitutional, and proceed to act in contravention of it. In *Threadgill v. Cross, supra,* is a statement by Mr. Justice Hayes, which we think should be also noticed here:

"There are other cases which in effect hold that, if the nature of a respondent's office is such that he is required to raise the question of the validity of a statute imposing a duty upon him, or if his personal interest is such as will be affected by the statute, he may contest its validity in a mandamus proceeding brought to enforce the performance of the duty; but we do not deem it necessary to cite or comment upon those cases, for we do not regard them in point in the case at bar."

We are of the opinion that the peremptory writ ought to be awarded, but, as the court is informed that the parties hereto are in good faith seeking to have their rights in the premises determined, it will not issue, unless it appears that after notice of this opinion it is necessary to give effect to the judgment of the court.

It must not be understood that this opinion in any way reflects the views of the court upon the merits of any of the cases pertaining to the validity or invalidity of the organization of

Swanson county; none of those cases have reached this court, and the court can have and has no opinion as to their merits.

TURNER, C. J., and DUNN and HAYES, JJ., concur; WILLIAMS, J., absent, not participating.