ALLEN v. HOLBROOK, Sheriff, et al.

No. 6564.   Decided March 27, 1943.   (135 P. 2d 242.)

320

322

Rehearing denied May 29, 1943.

*E. LeRoy Shields,* of Salt Lake City, for appellant.

*Calvin L. Rampton,* of Salt Lake City, for respondents.

ELLETT, District Judge.

The lower court sustained a general demurrer to the complaint and dismissed the action when plaintiff refused to plead over. This appeal is from the order dismissing the action as to the sheriff, his two deputies, and the justice of the peace, and from the further order awarding $400 attorneys' fees to the sheriff and his deputies as the prevailing parties under Chapter 148, Laws of Utah 1937.

It appears from the complaint that plaintiff is and was a milk dealer with a store known as the Cream Store, located on the east side of U. S. Highway No. 91 near the Davis-Salt Lake County boundary line, and that on June 22, 1938, one of the defendants other than those before this court on appeal signed an affidavit before C. W. Newton, a justice of the peace of Davis County, for the purpose of having plaintiff's store searched. A search warrant was thereupon issued and given to the sheriff and his deputies, who searched the Cream Store and seized 801 quarts of bottled cream, and allegedly poured the cream into unclean containers and appropriated the bottles and refused to return them to the plaintiff. The value of the cream and bottles is set forth, and it is also alleged that trade and customers were lost as a result of the search. The complaint also states that the acts of the defendants were wanton, malicious, wrongful, violent, and unlawful.

The affidavit was filed and warrant issued pursuant to Title 95, Chapter 2, Section 10, Revised Statutes of Utah, 1933, which section reads as follows:

"Whenever any person shall make affidavit before a court of competent jurisdiction that he has reason to believe and does believe that any receptacle, container, carrier, box, equipment or supplies, bearing or having stamped, impressed or produced thereon, the name, mark,

brand or device, claim to which has been filed and published as provided in this title or before March 6, 1931, as provided by Chapter 2, Title 109, Compiled Laws of Utah, 1917, or by Section 8452 of the Compiled Laws of Utah, 1917, is in the possession of any person engaged in any business specified herein (other than the owner, as herein defined), or in the possession of any secondhand or junk dealer, or of any person engaged in the purchase or sale of merchandise, or that any such receptacle, container, carrier, box, equipment or supplies is secreted in any place specified in such affidavit, such court shall issue a search warrant for such property and shall direct an officer to take the same into his possession and bring before such court the person in whose possession such receptacle, container, carrier, box, equipment or supplies may be found, and if it shall be adjudged that such person has been guilty of a violation of this chapter, the court shall award possession of such property to the owner thereof."

It is contended by appellant that the affidavit upon which the search warrant was issued was insufficient—that probable cause did not exist—and that the search warrant was illegal and void and the search conducted in pursuance thereof wrongful and unlawful and violated the rights of the Plaintiff.

The affidavit duly signed and filed, omitting the heading, is as follows:

"State of Utah ⎱S.S.
"County of Davis⎰

"Eugene C. Leonard, being first duly sworn, deposes and says:

"That he is an inspector for the Utah State Department of Agriculture:

"That he has reason to believe, and does believe that milk and cream bottles not owned by defendant bearing and having stamped, impressed and produced thereon various names, marks, brands or devices, claims to which have been filed and published as provided in Title 95, Chapter 2, Revised Statutes of Utah, 1933, or before March 6, 1931, as provided by Chapter 2, Title 109, Compiled Laws of Utah, 1917, or by Section 6452 of the Compiled Laws of Utah, 1917, are in the possession of the defendant in violation of Section 95-2-4, Revised Statutes of Utah, 1933; and that such registered trade marked milk and cream bottles are being kept for the purpose of selling milk and cream by the defendant and at defendant's place of business in Woods Cross, Davis County, State of Utah, located on

the East side of U. S. Highway No. 91 and immediately north of the Salt Lake-Davis County line, and operated under the name 'The Cream Store,' wherein defendant is engaged in the business of selling milk and cream.

"That the facts and circumstances upon which affiant bases his belief that said registered trade marked bottles are in the possession of the defendant at the place aforesaid are as follows: That said defendant has twice during the past three months been arrested and convicted for the illegal use of said bottles, and that he refused to refrain from using them and now freely admits that he is continuing the use thereof.

"And affiant further says that said milk and cream bottles are owned by the persons whose registered trade marks are stamped, impressed and produced thereon in each instance; and that defendant has no registered trade mark of his own for milk and cream bottles.

"Wherefore, affiant prays that a Search and Seizure Warrant be issued to the sheriff of Davis County, Utah, or other officer of the State of Utah, authorizing, empowering and directing him to search the aforesaid place and premises and take the said registered trade marked milk and cream bottles into his possession and bring before this court the person in whose possession such bottles may be found.

"Eugene Grant Leonard

"Subscribed and sworn to before me this 22 day of June, A. D., 1938.

"Chas. W. Newton
"Justice of the Peace"

The affidavit complies with Section 95-2-10, R. S. U. 1933 as set forth above, but this court has heretofore held that Section to be in conflict with article 1, Section 14, of the Constitution of the State of Utah. *Allen* v. *Lindbeck, Justice of the Peace, et al.,* 97 Utah 471, 93 P. 2d 920. This search and seizure, however, was made prior to the decision of the Lindbeck case, and the question naturally arises as to whether an officer is civilly liable for acting under a statute that is subsequently declared invalid.

This question has been decided by very few courts, and there is no unanimity of opinion in the decisions. The older cases seem to hold that an unconstitutional law afforded no protection to officers who acted under it. The law was

assumed to be void and of no effect whatsoever and left the officers in the same position as if there never had been such a law on the books. See 12 C. J. 800, Constitutional Law, § 228. Most of the cases there cited, however, deal with the payment of moneys under unconstitutional statutes or with the acts of officials whose tenure was brought about by law subsequently declared to be unconstitutional.

The evils of such a holding, however, were apparent, since it is by no means easy ofttimes for even a trained lawyer to tell whether or not a law is unconstitutional. The judges of the Supreme Courts of the various states and of the United States are frequently divided in their opinion on the question of whether a law should or should not be held unconstitutional. To make the sheriff and his deputies, who are not supposed to be lawyers, act at their peril under every case which has not been tested before the court of highest appeal would certainly work a great injustice to these officers and would tend to work against public policy for the reason that the officers would always be hesitant in carrying out the directions of the statutes and the orders of the courts.

The more recent cases have recognized this, and when the article on constitutional law was written into Corpus Juris Secundum in 1939 the following statement was inserted:

"The rule that an unconstitutional law is a nullity cannot be applied to work hardship and impose liability on a public officer who, in performance of his duty has acted in good faith in reliance on the validity of a statute before any court has declared it invalid." 16 C. J. S., Constitutional Law, § 101, p. 290.

The latest cases on this subject have come from the State of Oklahoma and involve the liability of public officers for moneys expended under authority of a statute subsequently declared unconstitutional. In holding that such officers were not liable, the Supreme Court of Oklahoma in *Wade v. Board of Commissioners of Harmon County,* 161 Okl. 245, 17 P. 2d 690, 692, stated:

"Plaintiff contends that the court erred in sustaining defendants' demurrer to the first and second causes of action, and in this connection asserts that, when the defendants allowed the salaries of the county officers under the special act, they did so at their peril, that such special act is unconstitutional, and that the excess in salaries allowed thereunder was illegal, and that he was therefore entitled to recover double the amount thereof under sections 8590, and 8591, supra. We do not agree with this contention. The general rule is that laws are presumed to be constitutional, and ministerial officers may safely rely thereon and follow them until they are held unconstitutional or until such officers are advised by the proper officers that they are unconstitutional. *State ex rel.* v. *Cease*, 28 Okl. 271, 114 P. 251, Ann. Cas. 1912D, 151; *Threadgill* v. *Cross*, 26 Okl. 403, 109 P. 558, 138 Am. St. Rep. 964; *State ex rel. Wiles* v. *Williams*, 232 Mo. 56, 133 S. W. 1, 34 L. R. A., N. S., 1060."

In a later case *Gordon* v. *Conner,* 183 Okl. 82, 80 P. 2d 322, 324, 118 A. L. R. 783, a similar action was brought and recovery was attempted on the grounds that while the particular act in question had never been declared unconstitutional prior to the expenditure of the money in reliance upon it, the officers should have been put on their guard by the fact that other similar acts have been declared unconstitutional. In treating this contention, the court stated:

"No contention is made that defendants were ever advised by the proper officials as to the unconstitutionality of the special act. Plaintiffs take the position that since this court on several occasions has held similar acts to be unconstitutional, the defendants, being chargeable with a knowledge of the law, are chargeable with knowledge of the unconstitutionality of the special act involved herein. We cannot concur in this contention. The unconstitutionality of the special act involved herein had never been judicially established. Defendants were entitled to rely thereon as a source of authority for their official acts without assuming the risk of incurring heavy penalties in the event such act was subsequently declared to be in contravention of a constitutional provision and therefore invalid. The presumption is that a law is constitutional until its unconstitutionality is judicially established. See *State* v. *Cease*, 28 Okl. 271, 114 P. 251, Ann. Cas. 1912D, 151."

See, also, *Lange* v. *Bayonne,* 74 N. J. L. 455, 68 A. 90, 15 L. R. A., N. S., 93, 122 Am. St. Rep. 391, 12 Ann. Cas.

961; *Sessums* v *Botts,* 34 Tex. 335; *Shafford* v. *Brown,* 49 Wash. 307, 95 P. 270; *State* v. *McNally,* 34 Me. 210, 56 Am. Dec. 650; *Cudahy Packing Co.* v. *Harrison,* D. C., 18 F. Supp. 250; *Birdsall* v. *Smith,* 158 Mich. 390, 122 N. W. 626.

In the case of *State ex rel. University of Utah* v. *Candland et al.,* 36 Utah 406, 104 P. 285, 24 L. R. A., N. S., 1260, 140 Am. St. Rep. 834, this court considered the question here involved. In that case a writ of mandamus was sought by the University of Utah to compel the State Land Board Commissioner to convert certain investments of the University of Utah land fund into cash for the purpose of constructing buildings in compliance with the provisions of a statute. The Land Board defended on the grounds that the act was unconstitutional, and this court in deciding the matter, 36 Utah at page 418, 104 P. at page 290, said:

"When the law requires an officer to act, although the act be ministerial merely, if he is directly responsible for his official acts he may refuse to act, if in his judgment the law is in conflict with some constitutional provision, and, in case proceedings are instituted to coerce him, he may set up the supposed defect in the law as a defense. No other conclusion is permissible if the Constitution is the supreme law, and if legislative acts in conflict therewith are not merely voidable but are absolutely void. A legislative act which is in conflict with the Constitution is stillborn and of no force or effect—impotent alike to confer rights or to afford protection. This general doctrine is adopted by the courts generally and is the doctrine promulgated by the Supreme Court of the United States, as appears from the case of *Norton* v. *Shelby County,* 118 U. S. [425], 442, 6 S. Ct. [1121], 1125, 30 L. Ed. 178, where Mr. Justice Field, in speaking for the court, says: 'An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed.'

"If this be true, how can any officer, who is responsible for his official acts and who has taken the required oath of office that he 'will support, obey, and defend' the Constitution of the state, justify any act which in his judgment is contrary to or is forbidden by the Constitution, and which is in fact so, although the act be required of him by some legislative enactment? The fact that the act required at his hands is merely ministerial does not change the effect so far as the. officer is concerned. If the legislative enactment under which he is required to act is in conflict with the Constitution, the Constitu-

tion and not the enactment prevails, and the officer must obey the Constitution or violate his oath of office. *If, however, a court of competent jurisdiction has entered judgment declaring the enactment valid, and such judgment under the general law is binding upon the officer, then the officer may not disregard the judgment and refuse to act simply because in his judgment the court has erred. Under such circumstances he is relieved from further responsibility the same as a mere subordinate who is not responsible for the official act would be, and hence cannot legally refuse to act."* (Italics ours.)

The holding of the court was to the effect that an officer was not protected by an unconstitutional act if he acted on his own volition but was protected if he was acting under the orders of a court of competent jurisdiction.

We, therefore, hold that when a court of competent jurisdiction issues process based upon a statute, the mere issuing of process is a sufficient declaration of the constitutionality of that statute as to afford protection to an officer who in good faith serves the process; and in the instant case the fact that Section 95-2-10, R. S. U. 1933, was declared unconstitutional after the acts complained of by the plaintiff herein does not, in and of itself give him grounds for action against the justice of the peace who issued the writ, nor against the sheriff and his deputies who served it.

The plaintiff also complains that there was no probable cause shown by the affidavit to justify the issuance of the writ and that the justice of the peace was without jurisdiction to proceed and hence all of the defendants were liable for the damages sustained. The plaintiff contends that the affidavit upon which the search and seizure writ was issued does not comply with Title 105, Chapter 54, R. S. U. 1933. The defendants contend that Title 105, Chapter 54, R. S. U. 1933 is not applicable and that the warrant needs no statute other than Section 95-2-10, R. S. U. 1933.

It will be noted that nowhere in Title 95 is the form of a search warrant set forth, and we hold that the reference

therein to a search warrant wherein it is said "* * * such court shall issue a search warrant for such property and shall direct an officer to take the same into his possession * * *" refers to the general provisions concerning search warrants as found in 105-54 above; and that Section 95-2-10 was intended merely to modify and not to replace the general statute.

Since the modifying part of that statute was held unconstitutional (*Allen* v. *Lindbeck, Justice of the Peace, et al.,* 97 Utah 471, 93 P. 2d 920, above), we must look to the general law to see if the affidavit was sufficient to give probable cause.

Section 105-54-3, R. S. U. 1933, provides as follows:

"A search warrant shall not issue except upon probable cause supported by oath or affirmation, particularly describing the place to be searched and the person or thing to be seized."

Article 1, Section 14, of the Constitution of the State of Utah says:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized."

Under the case of Allen v. Lindbeck, Justice of the Peace, et al., above, it was held that the affidavit must set forth facts sufficient to cause a discreet and prudent man to believe that the accused had the property sought to be seized. The fact that the affiant says he has that belief, in and of itself, is not sufficient to make probable cause. Furthermore, the allegation in the affidavit *that said defendant has twice during the past three months been arrested and convicted for the illegal use of said bottles, and that he refused to refrain from using them* is not sufficient to make probable cause as contemplated by the general statute or the Constitution. The affidavit in this case further sets forth that defendant *now freely admits that he*

*is continuing the use thereof.* This is a mere conclusion of the affiant; no facts being set forth upon which a complaint for perjury could be predicated if falsely given. The substance of the admission is not given nor is the person named to whom the purported admission was made. The affidavit does not show probable cause to exist for the issuance of a search and seizure warrant under the general laws and the Constitution of the State of Utah.

Whether or not the justice of the peace is liable will depend upon whether he had jurisdiction and whether he acted ministerially or judicially in the matter.

A justice of peace has power to issue search warrants. Section 105-54-1, R. S. U. 1933 says,

"A search warrant is an order in writing, in the name of the state, signed by a magistrate and directed to a peace officer, commanding him to search for personal property and bring it before the magistrate,"

and Section 105-10-5, R. S. U. 1933 enumerates magistrates as follows:

1. Justices of the Supreme Court
2. Judges of the District Courts
3. Judges of City Courts
4. Justices of the Peace.

A magistrate acts in a ministerial capacity when he issues a warrant, and for delicts in ministerial matters he would be liable for damages caused thereby; but the determination of whether or not probable cause for issuing a search and seizure warrant is shown to exist is a judicial function, and if he commits error in that matter it is a judicial error and he is not liable for damages occasioned thereby.

For a statement of the law and a collection of cases see 31 Am. Jur. 717 et seq.

In the instant case the justice of the peace, C. W. Newton, erred in supposing he had sufficient grounds to issue the search and seizure warrant, but since he

acted judicially when he passed upon that matter he is not liable.

The law is well settled that if the warrant was fair upon its face the sheriff and his deputies will be protected in properly serving. Cornelius states the law in his work, "The Law of Search and Seizure" (Second Edition), at page 961:

"A search warrant that is regular upon its face and directed to a ministerial officer for execution, and issued by one duly authorized, is a protection to such officer in executing it in an orderly manner and he is, therefore, not liable for so doing, even though the warrant in fact be invalid for some reason not apparent upon inspection."

And again in the same work at page 941 he says:

"The constitutional guaranty that 'the people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures' is a restraint upon officers executing a search warrant as well as upon magistrates issuing it. The law protects an officer in the execution of a warrant if there is no defect or lack of jurisdiction apparent on the face of the warrant, for such a rule is founded in order to secure a prompt and effective service of legal process and because of reasons of public policy."

The complaint contains a copy of the affidavit and also of the warrant. Counsel for the defendants contend that the complaint sets forth a complete defense to the matters therein complained of by setting forth the affidavit and warrant. The warrant as set forth, omitting the heading, is as follows:

"The State of Utah to the Sheriff of Davis County, Utah, and to Other Officers of the State of Utah:

"Proof by verified affidavit having this day been made before me by Eugene C. Leonard that there is reason to believe and that he does believe that milk and cream bottles not owned by defendant bearing and having stamped, impressed and produced thereon various names, marks, brands or devices, claims to which have been filed and published as provided by law are in the possession of the defendant in violation of Section 95-2-4, Revised Statutes of Utah, 1933; that such bottles are being kept for the purpose of selling milk and cream by the defendant at defendant's place of business in Woods Cross, Davis County, State of Utah, located on the East side of U. S. High-

way No. 91 immediately North of the Salt Lake-Davis County line, and operated under the name, 'The Cream Store,' and that said bottles are owned by the persons whose registered trade marks are stamped impressed and produced thereon in each instance; and from the facts disclosed in said affidavit I do find that there is probable cause to believe that the facts stated in said affidavit are true.

"In the Name of the State of Utah, I hereby command you to forthwith thoroughly search said place and premises and take the said registered trade marked milk and cream bottles into your possession, if any shall be found, and bring before this court the person in whose possession such bottles may be found.

"Given under my hand this 22nd day of June, 1938.

> "Chas. W. Newton
> "Justice of the Peace"

It will be noted that the only description in the warrant of the goods to be seized is the following:

"* * * milk and cream bottles not owned by defendant bearing and having stamped, impressed and produced thereon various names, marks, brands or devices, claims to which have been filed and published as provided by law * * * and that said bottles are owned by the persons whose registered trade marks are stamped, impressed and produced thereon in each instance. * * *"

Our Constitution and law require that the description of the goods to be seized must be set forth with reasonable particularity. Constitution of Utah, Article 1, Section 14; Section 105-54-7, R. S. U. 1933.

What constitutes reasonable particularity has been decided by a number of courts. Ruling Case Law sets forth the general rule in the following language:

"In order to comply with the constitutional provisions regulating the issuance of search warrants, the property to be seized under a warrant must be particularly described therein and no other property can be taken thereunder. The goods to be seized must be described with such certainty as to identify them, and the description must be so particular that the officer charged with the execution of the warrant will be left with no discretion respecting the property to be taken." 24 R. C. L. 714, § 17.

Whether or not the goods are sufficiently described in the warrant depends upon the question of whether the identity of the goods or its character is a matter of concern. If the goods are contraband or of such a character or nature as to be unlawful or illicit under the circumstances surrounding it, a general description of the goods seems to be sufficient. Those cases holding the general description to be sufficient are cases wherein intoxicating liquors, gambling devices, and quasi-contraband goods were involved. They are cases wherein a specific description is difficult, if not impossible, to be had. The goods are hidden from sight of those who are interested in upholding the law, and the courts have not required such specific description in that type of cases as they have in cases involving ordinary chattels such as stolen property, etc. Cornelius, The Law of Search and Seizure, Second Edition, paragraph 202, page 489. See, also, *People* v. *Prall,* 314 Ill. 518, 145 N. E. 610; *Elrod* v. *Moss,* 4 Cir., 278 F. 123, 124.

The goods sought to be recovered by the warrant in this case were:

"* * * milk bottles stamped with various names, marks, brands or devices, claims to which have been filed and published as provided by law * * * and that said bottles are owned by the persons whose registered trade marks are stamped, impressed or produced thereon in each instance."

From the warrant itself the sheriff could not possibly know what bottles to seize. Nowhere in the warrant are the marks, brands, names or devices set forth with any particularity or at all. It is not bottles with marks, brands, names and so forth impressed or stamped thereon that the warrant calls for, but rather it is those with *names, marks, brands or devices impressed thereon and to which claims have been filed and published as provided by law,* and which *are owned by the persons whose registered trade marks are stamped, impressed, and produced thereon, in each instance.*

This is not sufficient direction to the sheriff to seize specific bottles but leaves it to him to search the records of the office of the Secretary of State of Utah to see which mark or brand is registered and then to see to whom it is registered. He must also determine whether in each instance the claim has been filed and published as provided by law. He cannot know what bottles to take from the warrant alone and hence his warrant is not fair on its face. The search warrant being improvidently issued and not fair upon its face, the sheriff and his deputies may not rely thereon when sued for the damages occasioned by the search and seizure. Hence the complaint in setting forth the affidavit and warrant did not thereby state a defense to the cause of action pleaded.

There is still a further reason why the complaint states a cause of action good against a general demurrer. The complaint states that the officers seized the 801 bottles of cream and poured the contents thereof into unclean containers. This was clearly beyond the scope of the warrant and would make the officers liable regardless of the regularity of the process under which they acted. Under the allegation made, proof could be given that the cream was poured into the garbage can. The warrant only ordered the sheriff to take the bottles into his possession and hold them until the ownership thereof could be determined by the magistrate. It may be that the officers poured the milk as directed by the plaintiff, but that would be a defense that does not appear from the complaint.

The further argument is made by the plaintiff that the lower court erred in assessing attorneys' fees of $400 against the plaintiff for the reason that the fees can only be allowed upon a final determination of the action, and he contends that a ruling upon demurrer and judgment dismissing the complaint is not such a final determination. Inasmuch as the case must be remanded for further proceedings, it is not necessary to determine that point.

The action of the lower court is sustained insofar as the judgment of dismissal applies to the justice of the peace, C. W. Newton, but is reversed as it applies to the sheriff and his deputies.

The order dismissing the action against Joseph H. Holbrook, Calvin G. Roberts, and Reed Oviatt is hereby annulled and vacated and the case is remanded with directions to the District Court to overrule the demurrer and to permit the defendants to answer the complaint. Each party to bear its own costs.

WOLFE, C. J., and LARSON, and McDONOUGH, JJ., concur.

MOFFAT, J., dissents.

WADE, J., having disqualified himself, did not participate.