STATE of Utah, Plaintiff and Respondent,

v.

Paul David VAN DYKE, Defendant and Appellant.

No. 15687.

Supreme Court of Utah.

Dec. 28, 1978.

Salt Lake Legal Defender Assn., Andrew A. Valdez, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Two men committed an armed robbery at the Villa Theatre. At gun point they took money contained in small bags that belonged to the theatre. There also was a note written by an employee of the Villa Theatre enclosed in the bags. As the robbers left the theatre, a patron observed a masked man get in a car. He noted the number on the license plate, towit: "RJD ___58." He did not get the first numeral on the plate.

The officers of the law were holding a stake-out on the home of the defendant and about 30 minutes after the robbery, a car fitting the description of the car seen at the theatre and bearing the license plate "RJD 458" appeared at defendant's home. Another car arrived almost simultaneously in which the defendant was a passenger.

The officers obtained a search warrant from a justice of the peace in the precinct and searched the defendant's house where they found the cash, and the bags belonging to the theatre, as well as the note contained therein at the time of the crime. The defendant was arrested for the crime of aggravated robbery, that is, robbery with a firearm.

At trial the defendant moved to suppress the evidence secured during the search of his house upon the ground that the justice of the peace was not a law-trained judge. He cites statutes which provide that if the judge has the option of imposing a jail sentence upon a defendant, the defendant may demand that the case be transferred to a court presided over by a member of the Utah Bar. Also, he cites a statute which prevents a justice from receiving a fee if he issues a warrant of arrest without first submitting the facts of the case to the county attorney for approval. Those statutes have no bearing whatsoever upon the matter before us.

By our statute a justice of the peace is a magistrate[1] and section 77–54–1 of the Code states what is a search warrant as follows: "A search warrant is an order in writing, in the name of the state, signed by a magistrate and directed to a peace officer, commanding him to search for personal property and bring it before the magistrate."

In the case of *Allen v. Holbrook*[2] we held "A justice of the peace has power to issue search warrants." That claim has no merit to it.

In his brief the appellant cites a case to the effect that searches during the nighttime must be based upon an affidavit which must show positively that the property sought is in the place to be searched. The trouble with this argument is that the search warrant was not brought before us and nothing is made to appear that the warrant was defective. As a matter of fact the judge stated into the record that the affidavit was sufficient to justify the issuance of the search warrant. The appellant does not claim in his brief that there was any abuse of discretion on the part of the judge in his refusal to quash the war-

---

1. U.C.A.1953, section 77–10–5.

2. 103 Utah 319, at 331, 135 P.2d 242, at 247 (1943).

rant or to suppress the evidence obtained under it.

The appellant also claims that the trial court erred in permitting testimony of the other bad acts on the part of the defendant.

During the direct examination of a codefendant who *voluntarily* testified, the following questions and answers were recorded:

MR. IWASAKI: Q Did he mention the Villa Theater in general or specific terms on that occasion?

A There was a general term.

Q What was it that he generally mentioned about the Villa Theater on that occasion?

A There was a possibility they were going to have to go and find some place that was bigger, that brought in more money because they had been hitting a few rinky-dink places.

Q When you say you generally talked about the Villa, what are you talking about?

A Some something like maybe possibly the Villa Theater; that it brought in quite a bit of money.

The appellant now says that the testimony implicates him with other crimes. As a matter of fact, the Witness was merely telling what the defendant had told him.

The defendant waited for the testimony about the "rinky-dink places" to be completed and then moved for a mistrial. In his discretion, the trial court denied the motion.

Under Rule 55, Utah Rules of Evidence, evidence that a person committed a crime on a specified occasion is admissible to prove absence of mistake or accident; motive, opportunity, intent, *preparation, plan,* knowledge or identity. The testimony in this case established a plan and a motive for the crime in question and was relevant to the issues of intent, plan, preparation and knowledge. See *State v. Schieving,* 535 P.2d 1232 (Utah 1975).

Moreover, the general nature of testimony "they had been hitting a few rinky-dink places" is not evidence of a crime committed on a specified occasion and therefore is not within the proscription of Rule 55.

Under the circumstances of this case the trial court did not abuse his discretion in refusing to grant a mistrial.

After the defendant came home he took his girlfriend, who was waiting in his room, to a grocery store and paid for some groceries. She was somewhat irked at his leaving her alone at his place. She testified that after they left the store the defendant said:

. . . that he had gone to work and that it wasn't worth what he thought it would be.

Q Anything else said?

A I told him that I thought it was the Villa and that he probably got caught.

Q what did he say about that?

A Nothin'.

Q He was just silent?

A Yeah.

Q Anything else mentioned about him going to work on that evening?

A Not that I can remember.

Q When you went to the grocery store who paid for the groceries?

A Paul.

Q And did you see or were able to see how he paid for them?

A Cash.

Q And did you see any money that he had on him at that time? .

A I wasn't lookin'.

Q Now, in all the times that you've known Mr. Van Dyke have you ever known him to have a job?

MR. KELLER: Objection.

THE WITNESS: No.

MR. KELLER: May we approach the bench?

THE COURT: Sure. (Whereupon a bench conference was held at side bar.)

THE COURT: Motion is granted. The answer is stricken and the jury instructed to disregard the last answer of the witness.

The appellant complains about the above testimony. It seems that the court's ruling cured any possible error which might have been had in connection therewith. It also appears that any error would have favored the defendant because the answer is consistent with defendant's participation in the crime charged. If the defendant never worked but immediately after a robbery had money, it would be a factor to be considered by the jury along with all other evidence in determining whether or not they were convinced beyond a reasonable doubt of the defendant's guilt.

We have examined the record in this case and are unable to find any reversible error therein. The defendant had a fair trial and his guilt was established by overwhelming evidence. The judgment is affirmed. No costs are awarded.